Rachel ADAMS–SMYRICHINSKY,
Appellant

v.

Peter T. SMYRICHINSKY, Appellee

2013–SC–000812–DGE

Supreme Court of Kentucky.

RENDERED: AUGUST 20, 2015

COUNSEL FOR APPELLANT: Michael Richard Slaughter, Marion White Building, Louisville, Kentucky.

COUNSEL FOR APPELLEE: Thomas James Banaszynski, Oliver H. Barber, Jr., Rebecca Ann Smither, Barber, Banaszynski & Hiatt, PSC, Louisville, Kentucky.

OPINION OF THE COURT BY JUSTICE NOBLE

This case raises two legal questions. First, does a court in this state have the authority to alter the duration of a child support order issued by another state when the court in this state exercises jurisdiction under the Uniform Interstate Family Support Act? Second, does a court in this state have authority to modify an award of the federal dependent-child tax exemption made by another state, and if so, what factors must be present to award the exemption? The Oldham Family Court answered both questions in the affirmative, and the Court of Appeals affirmed that decision. This Court, however, concludes that the duration of a support award is not modifiable, and that while awarding a tax exemption as part of a *support* order is modifiable, further awards of the tax exemption require finding an actual nexus to support of the child, which the trial court did not do. Consequently, we reverse and remand.

## I. Background

The Appellee, Peter T. Smyrichinsky (referred to in the record as "Tod") and the Appellant, Rachel Adams–Smyrichinsky, were married in 1995. Their first child, Logan, was born in 1994, and the second, Maverick, was born in 1997. Tod filed for divorce in 2003, which began a rancorous and extremely litigious process that has resulted in this case. At the time, the parties were living in Indiana with their children.

The parties found little upon which they could agree. After a hearing, the circuit court in Harrison County, Indiana, entered a decree of dissolution in February 2005, leaving several property, custody, and support matters pending. The parties then entered into an agreed order signed by the Indiana court on November 9, 2005 resolving the property matters that had not been previously decided. This agreed order provided that the tax exemptions for the children for the years 1999 through 2005 would go to the husband if he chose not to file jointly on their belated returns (apparently the parties had not filed tax returns for those years). But the agreement also stated, and the court approved, the following: "Respondent shall receive children as tax exemptions for years following and applicable to IRS Tax Law." (Rachel was the respondent in that action.) In essence,

the parties treated the tax exemption as part of their marital property division.

The history leading up to this agreed order is instructive. The trial court had originally granted temporary joint custody of the two children to the parties during the proceedings in a "Provisional Entry" dated March 30, 2004, but had specifically ordered that Rachel "shall have physical custody of the children at all times when the children are not with their father," and then gave Tod very specific "physical custody" of every other weekend, one half the summer vacation in two time periods, and holidays in accordance with the Indiana Parenting Time Guidelines. Both parties found this order frustrating, and filed several *pendente lite* motions about time sharing and other matters. This is why the trial court finally agreed to bifurcate the proceedings, and entered the decree divorcing the parties, as referenced above, and reserving other matters. Specifically, the court required that the children were not to be removed from the United States at all, and not from Indiana or Kentucky except for vacations requiring specific notice. (Rachel and the boys had moved to Kentucky by then, but Tod still lived in Indiana.) The court then set a separate hearing date on custody and visitation and "any other matters" for February 17, 2005.

At that hearing, the parties entered into an agreed order that specified, again, new time sharing for Tod, and required that he pay "his regular support payment of $1,100/month."

Disputes arose over this order. The court vacated it, and entered another order, after a hearing, which gave very specific and detailed "custody" time for Tod, and increased the time the children were with him. But in the same order, the court found that Rachel should now be the "temporary primary physical custodian of the children," with Tod being the final

decision maker on which school the children attended. Despite noting that this was becoming an expensive divorce and that the parties had repeatedly delayed a final hearing, the court nonetheless again delayed setting a final hearing on custody, visitation, and support matters.

The agreed order of November 2005, referenced above, followed. Many motions and orders followed this, including contempt orders against Tod, and many continuances of the final hearing, some related to challenges of the judge and looking for another judge to hear the case. In the meantime, Tod filed a motion for *pendente lite* modification of child support. The lawyers that the parties had discharged filed motions for fees.

Finally, on January 7, 2009, the trial court (presided over by a different judge) conducted a hearing and entered an "Order for Child Custody, Support, Visitation, Contempt, and All Other Outstanding Issues." This final order named Rachel as "the primary physical custodian" of the children, with Tod to have "visitation" in accordance with the Indiana Parenting Time Guidelines, with some specifically addressed deviations. Clearly the court was trying to be as specific as possible to clarify the various areas of dispute the parties had enjoyed over the last four years. Oddly, despite earlier orders, the trial court found that it was so difficult to obtain evidence of the parties' income that he was simply imputing $500 per week to each parent, which resulted in Tod paying $53 per week in child support. After dividing the medical costs, the trial court then ordered the parties to split the tax exemptions for the children, each claiming one child, beginning in 2009. The court further ordered: "At the point in time in which only one child may be claimed, Mother will be entitled to claim that exemption for the first year followed by Fa-

ther the next year and rotating back and forth each year after."

Thus, after years of wrangling, a final custody, visitation, and support order was entered. That order related the award of the tax exemption to the amount of child support it set.

And then Tod moved to Kentucky.

Tod started this action by filing a petition to modify custody, support and visitation on December 10, 2010, in Oldham Family Court. This was accompanied by a motion asking the court to enter an order "transferring the jurisdiction of this matter to the Oldham Family Court ... pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)" because such was in the best interest of the children now that the parents and children lived in Kentucky and had significant connections here. A copy of most of the proceedings from Indiana was attached to the motion.

But Tod had also gone back to court in Indiana and moved that court to "assume jurisdiction" over the parties, though everyone now lived in Kentucky. Meanwhile, the Oldham Family Court had stated in an order that while it could "accept" jurisdiction of the case, it lacked the authority to order another state to "transfer" a case to him. Tod then moved the Indiana court to recast his motion as one to determine if the Indiana court retained jurisdiction. That court promptly found that it did not, since the parties and the children now resided in Kentucky; Kentucky had not declined jurisdiction; and Kentucky was likely the children's "home state."

Rachel responded to the pending motions in Oldham Family Court, and made motions of her own regarding custody, visitation, and support. Apparently, at some intervening time, the Oldham Family Court conferred with the court in Indiana, and entered an order on March 31, 2011, accepting jurisdiction under the UCCJEA. That order, while noted on the step sheet in the record, is not actually in the record, and the step sheet shows a blank page number. It is nonetheless referenced in a brief Tod filed with the family court in compliance with that order wherein he recites what the custody and parenting time schedule was at that time under the orders of the Indiana court. The family court entered some housekeeping orders, such as where a wage assignment for Tod's support payment should be sent.

The parties then began a contentious series of discovery motions, and motions for contempt because of perceived failures of the other party. As in Indiana, the surge of intervening-issue motions delayed the hearing on the motions regarding custody, visitation, and support that started the action. The family court set the hearing for July 15, 2011, and entered an interim order on visitation and communication while Tod was working for the Army Corps of Engineers in Afghanistan, looking ahead to summer time sharing.

Rachel resubmitted her original motion, but this time aimed solely at child support modification, because Tod's income was then in excess of $200,000 per year. Citing numerous motions for modification of child support from both parties, the court entered an order acknowledging that the parties needed finality on these matters, but exercised its "equitable powers" to set child support while Tod was overseas at $1,791 per month effective September 1, 2011, to be reviewed when Tod returned. The court also gave Tod the tax exemption for the two children "against his significantly greater income." And, oddly, the court ordered a set-off of $15,000 Rachel owed Tod as part of his property award against the child support, at the rate of

$200 per month. Visitation remained the same, and was also to be reviewed on Tod's return.

Both parties immediately moved to alter, vacate, or amend the order. The court denied these motions, but undid the set-off amount of $200 per month for the property award until the matter could be fully litigated, apparently believing at that point that it had jurisdiction to consider the property question.

Then, on April 17, 2012, the court reduced Tod's child support to $1,100 per month because his salary had dropped upon his return from Afghanistan. More discovery ensued on the original motions for custody, visitation, and support, which were still pending final resolution.

Logan turned 18, and Tod filed yet another motion to modify child support because Logan was emancipated. The family court scheduled this to be heard at a hearing on "the child support issues" to be held December 19, 2012. The court allowed pre- and post-trial memoranda from the parties, and also conducted a hearing to listen to counsel's arguments for their clients' respective positions. In an order entered January 9, 2013, the trial court made the dispositions that are the subject of this appeal.

First, the trial court noted that it obtained jurisdiction based on the Indiana court's order transferring the case to Kentucky under the UCCJEA because Kentucky was the children's "home state."

The court then addressed its previous orders relating to setting Tod's child support obligation up to that point, and stated that the parties did not dispute the court's jurisdiction over support and enforcement of support. The court noted that it was undisputed that at the time Logan was over age 18, but that Maverick was only 15. The court then, over Rachel's objections that support for Logan had to continue until age 21 under Indiana law, applied Kentucky's statutes and guidelines to set child support at $875 per month for Maverick alone, retroactive to September 1, 2012, and apportioned medical expenses.

The court further ordered Rachel "to sign any and all IRS documents as previously ordered to allow Tod to take the tax exemptions for 2009, 2010 and 2011." The court allowed Rachel the exemption for Maverick for 2012, and the years thereafter until Maverick reached age 18. After age 18, the court said, the parties could deal with any available exemption based on who provided the majority of the child's support. The court, apparently having researched the matter, correctly found that there could not be an offset of property against child support.

Finally, the court reiterated that visitation should be in accordance with its previous parenting orders. The court did not state that this was a final and appealable order, though such continuing jurisdiction orders must be appealable or evade review.

Predictably, Tod filed a motion to alter, vacate, or amend. Rachel merely filed an appeal, which has resulted in this review. The Court of Appeals affirmed the Oldham Family Court, raising the Uniform Interstate Family Support Act (UIFSA) and citing *Hart v. Hart*, 774 S.W.2d 455 (Ky. App.1989), as authority for allowing a state court judge to award a federal tax exemption in a custody case.

Because we find this record, and others the Court has reviewed, reveal that there is general misunderstanding of the interconnecting roles of the UCCJEA and UIFSA, which resulted in an erroneous determination as to the controlling age of majority, and because *Hart v. Hart* does not apply to courts of a state that is not

the issuing state of a property award, we took discretionary review of this case.

## II. Analysis

This case involves three distinct bodies of law that must be applied when issues such as those in this case are presented to a trial court.

First, what action may a Kentucky court take regarding *custody and visitation* under the UCCJEA when it is not the issuing state for the order? This question was litigated below, but custody and visitation issues are not raised in this appeal. Nonetheless, because the UCCJEA was the only statute asserted to begin this action in Kentucky, we discuss its application to distinguish UCCJEA questions and jurisdiction from the UIFSA issues.

Second, what action may a Kentucky court take regarding *child support* under the UIFSA when it is not the issuing state for the order, and can a Kentucky court, as a subsequent court, alter the *duration* of the original support order?

And finally, what action may a Kentucky court take to assign the dependent-child tax exemption when modifying a child support order of another state?

### A. Modifying A Custody Order From Another State Under the UCCJEA.

The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) is a uniform law designed to govern which state court has jurisdiction at a particular point in time over custody and visitation questions regarding a child. The UCCJEA has been adopted in 49 states, and Kentucky's version is found at KRS 403.800 to .880.[1]

The UCCJEA is primarily concerned with *child custody determinations.* KRS 403.800(3) makes clear that this does not extend to "an order relating to child support or other monetary obligation of an individual." Instead, the Act focuses on "a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child." KRS 403.800(3). A custody order covered by the Act "includes permanent, temporary, initial, and modification orders." *Id.*

The UCCJEA first addresses when a court has jurisdiction to make an initial child custody determination. *See* KRS 403.822. Such jurisdiction exists only in four circumstances, all of which are listed in the alternative.

First, a court has jurisdiction to make an initial determination when this state is the home state of the child on the date a proceeding commences in Kentucky. KRS 403.822(1)(a). A "home state" is the state where a child lived with a parent, or a person acting as a parent, for at least six consecutive months prior to the filing of a custody proceeding involving that child. KRS 403.800(7).

Second, a court has jurisdiction over an initial determination if a court of another state does not have home-state jurisdiction or a court of the home state has declined jurisdiction in favor of Kentucky as the appropriate forum to decide custody and visitation matters.[2] KRS 403.822(1)(b). To proceed under this circumstance, a court must also find that the child and his or her parents, or the child and one parent

---

1. The Parental Kidnapping Prevention Act (the PKPA), 28 U.S.C. § 1738A, is a federal act that deals with similar concepts and may also have a bearing on a court's ability to exercise its jurisdiction.

2. Of course, courts of other states, such as Indiana, are not bound by Kentucky statutes. Excepting Massachusetts, however, those other states have all adopted their own versions of the UCCJEA. Citations to the controlling language in this opinion are to the Kentucky version of the UCCJEA.

or a person acting as a parent, have significant connections to this state, and that substantial evidence is available here regarding the child's needs. *Id.*

Third, a court has jurisdiction over an initial determination if all courts having jurisdiction under KRS 403.822(1)(a) and (1)(b) have declined jurisdiction on the ground that this state is the more appropriate forum. KRS 403.822(1)(c). Obviously, there is some overlap between this circumstance and the one laid out in KRS 403.822(1)(b), as described in the preceding paragraph.

Finally, a court has jurisdiction over an initial determination if *no other* court would have jurisdiction under KRS 403.822(1)(a) to (1)(c). KRS 403.822(1)(d). This final provision is a catch-all to avoid some difficult-to-foresee sets of facts that would otherwise allow a recalcitrant parent to avoid the reach of any court.

And once a court makes a custody determination, it "has exclusive, continuing jurisdiction over the determination," KRS 403.824(1), until one of two things happens. Continuing jurisdiction ceases if the issuing court determines that neither the child, nor a child and one parent or person acting as a parent, have a significant connection with the state and that substantial evidence concerning the child's needs is no longer available in the state. KRS 403.824(1)(a). Jurisdiction also ceases if a court of the state or a court of another state determines that the child, the child's parents, and any person acting as a parent no longer live in the state that issued the custody determination. KRS 403.824(1)(b).

The preceding lays out a court's jurisdiction to make an initial custody determination. Of course, this case does not concern an initial custody determination, since that had already been done by the Indiana courts. Instead, it concerns a *modifica-*

*tion* of the Indiana orders. Jurisdiction to modify another state's custody order is provided by KRS 403.826. That jurisdiction exists only if the Kentucky court would otherwise have jurisdiction to make an initial determination under KRS 403.822(1)(a) and (1)(b), as described above, absent another court having made an initial determination. In addition, the court of the other state that issued the custody order must have decided either that it no longer has continuing, exclusive jurisdiction or that a court of this state would be a more convenient forum, KRS 403.826(1); or a court of this state or the other state must find "that the child, the child's parents, and any person acting as a parent do not presently reside in the other state," KRS 403.826(2).

When proceedings have already been commenced in some other state, the Kentucky court, before holding a custody hearing, must examine the court documents from the other state and other information supplied by the parties. KRS 403.832(2). If it appears that the other court has jurisdiction under the UCCJEA, then the Kentucky court must stay the proceeding here, and communicate with the court of the other state to determine if Kentucky is the appropriate forum at that time. *Id.* If the court of the other state does not conclude that Kentucky is the more appropriate forum, then the Kentucky court must dismiss the proceeding before it. *Id.* But if the court of the other state decides that Kentucky is the more appropriate forum, it may decline jurisdiction in favor of Kentucky. *Id.*

But in such a scenario, the case is not "transferred" to Kentucky, as is commonly stated. Instead, the Kentucky court simply asserts its jurisdiction over the custody and visitation matter under the UCCJEA where the other state has, in essence, declined jurisdiction.

■ Applied to the facts of this case, an Indiana court clearly made the initial custody and visitation determination regarding the two children of the marriage. And at the time Tod filed his petition in Kentucky, he had also filed a modification and enforcement action in the original court in Indiana. At that time, the Indiana court had continuing, exclusive jurisdiction under KRS 403.824. Thus, the Oldham Family Court did not have jurisdiction under the UCCJEA until it consulted with the court in Indiana and the requisite statutory findings were made.

There was apparently some confusion about which steps are necessary to invoke jurisdiction under the UCCJEA. First, the Oldham Family Court appeared to think that the case must be "transferred" to Kentucky, and that it could not order another court to take this action. As a result, the court did nothing at that point. Sometime later, after Tod obtained an order from the Indiana court stating that it no longer had jurisdiction because Kentucky was "likely" the child's home state, the Oldham Family Court did consult with the Indiana court, and did exercise its jurisdiction over the custody and visitation issues.

But under circumstances such as these, the first Kentucky court action should be to contact the court which issued the existing custody and visitation order that is before the court in Kentucky in order to make the proper determinations about jurisdiction, so as to avoid unnecessary delays and expense to the parties, as occurred here.

As previously noted, jurisdiction is not "transferred," as the Oldham Family Court seemed to understand it. A court either has subject-matter jurisdiction in a case or it does not. As outlined above, once a court of another state has issued a child custody order, a Kentucky court does not have jurisdiction over those custody matters unless the other court subsequently declines jurisdiction. At that point, if the prerequisites exist for a Kentucky court to exercise jurisdiction, it simply has jurisdiction. That jurisdiction has not been given to it by the other court. Though it is a fine distinction, it is nevertheless an important one.

Nonetheless, the record reflects that the Oldham Family Court was ultimately correct in exercising custody jurisdiction under the UCCJEA. The children and both parents resided in Kentucky and had for a time greater than six months prior to the filing of the petition. The Indiana court declined to exercise further jurisdiction over custody in favor of the Oldham Family Court. Though the Indiana court did not state specifically that it declined jurisdiction because it was then an inconvenient forum, its conclusion that Kentucky was likely the children's home state was functionally such a finding.

The Oldham Family Court was then free to exercise its jurisdiction to consider the question of custody and visitation of the two children then before the court.

But the court did more than just decide visitation issues because it also considered child support issues and tax exemptions. That jurisdiction, if appropriate, must be found under another Act, not the UCCJEA.

**B. Modifying A Support Order From Another State Under UIFSA.**

Child *support* matters, as noted above, are *not* covered by the UCCJEA. The jurisdictional nexus required for the UCCJEA centers around facts relating to the child, primarily where the child's home state is and whether another state has already exercised or declined jurisdiction to make a custody determination. But jurisdiction to act in regard to a support

order of another state is governed by the Uniform Interstate Family Support Act (UIFSA), also a uniform law, which is set forth as adopted in Kentucky in KRS 407.5101 to .5902.[3] The Act covers only support relating to children[4] and it focuses on binding the person with a duty of support (the obligor, KRS 407.5101(17)) in order to collect the child support.

To enforce or modify a support order issued by another state, a Kentucky court must first determine whether there is only one child-support order, as there could be more than one. KRS 407.5207. The court that issued the support order has "continuing, exclusive jurisdiction" over its support order so long as either the child, the obligor, or the obligee remains a resident of the issuing state,[5] unless all the parties have filed written consent for another state to modify the order and assume continuing, exclusive jurisdiction. KRS 407.5205.[6] Thus, while the home state of the child is a primary factor under the UCCJEA, under UIFSA *continuing* jurisdiction turns primarily on the residence in the issuing state of any of the parties. If one of the parents or the child remains in the issuing state, that issuing state has continuing, exclusive jurisdiction over the support issue, unless it is waived in writing by all the parties. Essentially, the party still resident in the issuing state can keep support jurisdiction in that state even if the child now resides in another state; and jurisdiction continues in the issuing state even if both parents live elsewhere if the child remains in the issuing state.

But the issuing state's order can nevertheless be *enforced* in another state if the obligor has moved, even if the other parent or child remains in the issuing state. KRS 407.5206.

Modification of another state's order is more complicated. With one exception, Kentucky cannot modify another state's support order unless *all* the parties and the child have left the issuing state. KRS 407.5611; 407.5613. If all the parties and the child have left the issuing state, a Kentucky court has jurisdiction to modify under KRS 407.5613 when both the obligor and the obligee live in Kentucky; and a Kentucky court has jurisdiction under KRS 407.5611 if the petitioner is a nonresident of Kentucky and the Kentucky courts have personal jurisdiction over the respondent.[7] The exception is that Ken-

---

3. Kentucky's version of UIFSA was amended in June 2015. *See* 2015 Ky. Acts ch. 18. Citations in this opinion are to the version of the Act in effect before that amendment, unless otherwise noted, because that is the version of the Act applicable to this case.

4. The Act mentions spousal support, but only to note that a court issuing the spousal support order has continuing, exclusive jurisdiction over the order, and that other courts may not modify the order, though they may enforce it. KRS 407.5211.

5. Here, the *issuing state* is Indiana, which of course is not subject to KRS 407.5205. Indiana, however, has passed its own version of UIFSA, Ind.Code § 31–181–1 *et seq.*, which is substantially the same as Kentucky's Act. Because we are explaining how Kentucky's Act works, citations are to Kentucky's version.

6. This is an instance where the statute in question has been amended. Instead of a court of this state retaining jurisdiction until all the parties had filed consents in this state for a tribunal of another state to assume jurisdiction, under the new version of the statute, this state shall continue to have jurisdiction, even though the parties have all moved to another state, as long as all the parties consent to this state retaining jurisdiction. *See* KRS 407.5205 (2015). This is a small but important change.

7. Ordinarily, personal jurisdiction would arise from the respondent residing in Kentucky, but that is not the only circumstance under which personal jurisdiction exists. *See* KRS 407.5201 (laying out eight circumstances in which there is personal jurisdiction, including that the individual conceived the child in Kentucky).

tucky can have jurisdiction to modify if all the parties can agree in writing that Kentucky can modify the support order and become the state with continuing, exclusive jurisdiction. KRS 407.5611(1)(b). If a state has the statutory authority to modify a support order and exercises that authority by issuing a support order, it thereafter is the state with continuing and exclusive jurisdiction unless another state attains that status under the UIFSA. KRS 407.5611(4).

If there are simultaneous proceedings in another state, and the proceedings began first in the other state, as there were under the facts of this case, the Kentucky court may *not* exercise jurisdiction to establish a support order unless the other state court has lost or does not have jurisdiction over the support order. KRS 407.5204. Here, Indiana issued the support order and *had* continuing and exclusive jurisdiction over support matters as long as either parent or the child lived in Indiana. All the parties, however, resided in Kentucky when the Oldham County action began. The determinative factor for continuing jurisdiction under UIFSA is whether the parties continued to reside in Indiana; they did not. Kentucky's jurisdiction, then, turned on the fact that both parents lived in this state. KRS 407.5213. Thus, Indiana had lost continuing, exclusive jurisdiction under KRS 407.5205(1)(a), absent a consent in writing from all the parties, KRS 407.5205(1)(b), and Kentucky had gained jurisdiction.

UIFSA further requires that a party seeking to modify or enforce a court order of another state must register that order

with the Kentucky court where his support action has been filed. KRS 407.5609. The requirements for registration are set out in KRS 407.5602, and include: a letter of transmittal to the court requesting registration and enforcement; two copies, one certified, of all orders to be registered, including modifications thereof; a sworn statement of the movant or the custodian of the records stating the amount of any arrearage; and identifying information of the obligor and the obligee, particularly where they live. Upon receipt of these materials, the court must enter an order filing the documents as a foreign judgment. KRS 407.5602(2). A petition must also be filed stating the remedy being sought. KRS 407.5602(3). All of this is premised on establishing the appropriate jurisdictional facts showing that the court has jurisdiction in a particular case. Jurisdiction under UIFSA focuses on the personal jurisdiction necessary to bind the obligor to pay the support.[8] *See* Unif. Interstate Family Support Act 2001 § 611 cmt. (2001) ("UIFSA has its focus on the personal jurisdiction necessary to bind the obligor to payment of a child-support order.")

*None* of these steps were followed in this case. The petition was filed on December 10, 2010, and along with raising custody and visitation issues, also asked the court to "order reasonable child support to be exchanged between the parties." The UCCJEA was referenced in the complaint, but UIFSA was not mentioned. The complaint was accompanied by a motion to transfer jurisdiction pursuant to the

---

**8.** Although all fifty states have enacted UIFSA, some states have retained the predecessors to that act in whole or in part. Those predecessor acts, the Uniform Reciprocal Enforcement of Support Act (URESA) and the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), may have additional application in some cases. Federal law also has some bearing on an interstate support question, although only with respect to enforcement. *See* Full Faith and Credit for Child Support Orders Act (FFCCSOA), 28 U.S.C. § 1738B.

UCCJEA. There was no letter of transmittal requesting registration and enforcement of the Indiana support order, no copies of the relevant orders, nor any of the other statutory requirements. In fact, UIFSA was not mentioned at all in the record until the Indiana judge entered an order relinquishing jurisdiction to Kentucky under the UCCJEA *and* UIFSA. After that order was entered, Tod filed a notice in Oldham Family Court stating that the Indiana court had declined jurisdiction in favor of Kentucky to enforce visitation under the UCCJEA, again failing to mention UIFSA. Finally, on a separate motion to enforce *visitation* filed in Kentucky, Tod attached parts of the Indiana court record, including the judge's order declining further jurisdiction.

It should be clear that the statutory requirements are not *optional.* The purpose behind these requirements is to place enough information before the court to show that jurisdiction has vested in it as a subsequent court in order to expedite the handling of child support matters and to prevent interstate squabbles over which state court can exercise jurisdiction *in that case.* The Oldham Family Court clearly had subject-matter jurisdiction over the *type* of case before it (child support matters over a child resident in Kentucky), but had not established that it had jurisdiction over *that case,* whether because the Indiana court had lost continuing and exclusive jurisdiction under UIFSA or otherwise. In other words, it had not yet established that this case fell under the class of cases over which a Kentucky court has jurisdiction under UIFSA.

But the court exercised jurisdiction to modify support without any objection from the parties—and indeed did so at their request. Despite the parties' failure to follow the statutory requirements for registration, at that point no other court had

continuing, exclusive jurisdiction over support issues because Tod resided in Kentucky, as well as Rachel and the children. Personal jurisdiction was not an issue because the parties had submitted themselves to the Kentucky court. The Indiana court recognized this, and entered an order acknowledging that it no longer had jurisdiction over the case. The Indiana court did not *decline* to exercise further jurisdiction, which is allowed under the UCCJEA; it simply lost it. *See* KRS 407.5202(1) (explaining when a court's jurisdiction ceases).

■ But the rules for registering another state's order for purposes of modification, though important, can ultimately be waived. They are claim-processing rules, not substantive, jurisdictional limits on a court's authority to act. *See Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 161, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010) (distinguishing between the two concepts). Had Rachel timely objected that Tod had failed to follow KRS 407.5602, the trial court would have been required to dismiss the action, possibly after giving Tod time to cure the error. But she did not object on those grounds, and thereby waived any potential complaint about the failure to properly register the order. *Cf. Masters v. Masters,* 415 S.W.3d 621, 624 (Ky.2013) (holding that failure to include affidavits did not divest court of jurisdiction to modify custody).

Thus those procedural statutory requirements are waivable under the facts of this case, but they may not be in every UIFSA case. UIFSA cases are also instituted to *enforce* support orders of another state, and can be brought against an obligor that may be the sole resident of the enforcing state. In those instances, the issuing state does not lose jurisdiction, either because the other parent or child still reside there, or the parties have not consented to anoth-

er state having jurisdiction. The issuing state's support order remains enforceable as is until properly modified, and that court retains continuing and exclusive jurisdiction over the substantive aspects of the order, which modification affects. By operation of the statute, jurisdiction to modify never vests in the subsequent state as long as another state has continuing and exclusive jurisdiction, absent written consent. Generally, there can be no modification of a support order in an enforcement action alone. Thus it is certainly the better practice to *comply* with the statute from the beginning.

▪ And there is a practical consideration for these statutory requirements at the beginning of a case even where continuing and exclusive jurisdiction may end up being proper in the subsequent state: this information helps avoid the floundering around that occurred here, where it took months for the documents necessary to a decision to get before the court, which adds cost and delay to the parties. Simply stated, a UIFSA action, either to enforce, or to modify and take continuing and exclusive jurisdiction, is properly invoked by following the UIFSA registration statute. Obtaining jurisdiction under UCCJEA does not always equate to jurisdiction for support matters.

Part of the problem may be that there is apparent confusion about the meshing of custody and support issues, which are commonly heard together under our statutory scheme governing these issues in *original* actions. But when a decree or order is issued in another state and is being taken over by a court from á different state, the formalities that ensure jurisdiction are important. And given that there are comparable federal acts that govern both custody and support issues (the PKPA and FFCCSOA) there is an added layer related to these statutes that

courts must be aware of and address if necessary.

In this case, by this point in time, the statutory elements required to register a foreign decree or order can be established from various filings and proof in the record, such that there is substantial if not perfect compliance with the statute. More importantly, the jurisdictional prerequisites under KRS 407.5613 are indisputably present in this case. Thus, the Oldham Family Court has, and may exercise, continuing and exclusive jurisdiction over support of the affected children until they reach the age of majority or are otherwise emancipated.

As with the visitation issues, the court conducted several hearings related to support matters, and made multiple orders modifying support at various times based on Tod's fluctuating income. Nothing in the record indicates that the court was clearly erroneous in making the factual findings to establish the amounts of support he ordered, which were supported by the evidence in the record. There was no abuse of discretion.

▪ However, during this time, Logan turned 18, which gives rise to another legal issue in this case related to support. After Logan's 18th birthday, Tod moved the court to modify child support because Logan was emancipated. In response, Rachel argued that Logan was not emancipated under *Indiana* law, and that the Oldham Family Court did not have jurisdiction to modify the *duration* of support set by the Indiana court.

Rachel is correct. Kentucky's version of UIFSA has *always* provided that "[a] tribunal of this state may not modify any aspect of a child support order that may not be modified under the law of the issuing state." KRS 407.5611(3). Though there is a long history of state courts

extending the duration of support, usually through agreements by the parties, most states have a minimum age through which support must extend, unless the child is otherwise emancipated. For example, in Kentucky, parents owe a duty of support until at least age 18. KRS 405.020(1). The no-modification provision of KRS 407.5611(3) has been read to mean that "the duration of the support obligation remains fixed despite the subsequent residence of all parties in a new state with a different duration of child support." Unif. Interstate Family Support Act § 613 cmt. (1996). The official commentary to Section 611, which has been adopted as KRS 407.5611, also specifically notes that the duration of child support is controlled by the issuing state. *Id.* § 611 cmt.

And, if the matter were not clear enough, UIFSA was amended in 2001 to specifically state that the law of the state that issued the initial controlling order governs the duration of support. *See* Unif. Interstate Family Support Act § 611 (2001) (adding language that non-modifiable aspects "includ[e] the duration of the obligation of support"). Kentucky adopted this provision, which took effect on June 24, 2015. *See* 2015 Ky. Acts ch. 18, § 50. While this more specific language did not become a part of our statutes until this year, it is further proof of what has always been intended.

Kentucky's UIFSA choice-of-law provisions make it clear that duration of support is a matter of law of the issuing state because that is a non-modifiable aspect of the issuing state's order. Thus, it has long been clear that a subsequent court that obtains continuing and exclusive jurisdiction to modify the amount of support, may not modify the duration of payment of support.

The rationale behind this is that many times, given today's mobile society, multiple states obtain jurisdiction to modify the *amount* of support under UIFSA. There are sound reasons for such modifications to reflect changing incomes and the needs of the child. However, the duration question lends itself to forum shopping, with the obligor parent seeking to decrease the support obligation by moving to a subsequent state with a lower age of emancipation, which is the duration listed in most support orders. Also, this rule avoids a multiplicity of orders with duration set at different ages for the same child. The rule is simply a policy decision embedded in the UIFSA.

The March 12, 2009 final Indiana order of support did not specifically set the duration of support. However, the Indiana statutes set an age of emancipation for child-support purposes, and that is the age that applies to duration of the support order, as a matter of state law. (Agreements to extend support beyond age 19 may be another matter.) At the time the order was entered, Indiana specified age 21, unless the child was otherwise emancipated.[9] Ind.Code § 31–16–6–6 (2011). This put Indiana distinctly out of step with the majority of states, which set child-support emancipation at age 18 or 19. Partially for this reason, in 2012, Indiana amended its support emancipation statute significantly. *See* 2012 Ind. Legis. Serv.

---

9. Under Indiana law, emancipation occurs if the child is on active duty in the United States armed services, has married, or is not under the care or control of either parent of an individual or agency approved by the court. Ind.Code § 31–16–6–6(b). A version of emancipation could also occur if the child is at least 18, has not been enrolled in school for four months, and can support himself. Ind. Code § 31–16–6–6(a)(3); *see also Hirsch v. Oliver*, 970 N.E.2d 651, 657 (Ind.2012) (describing this provision as a form of emancipation).

P.L. 111–2012, § 2; see *also* 2013 Ind. Legis. Serv. P.L. 207–2013, § 45 (further amending the statute).

Under the current version of the statute, "the duty to support a child ... ceases when the child becomes nineteen (19) years of age." Ind.Code § 31–166–6 (2012). This has been read to apply to *all* support orders, current and future. *See Turner v. Turner*, 983 N.E.2d 643, 648 (Ind.Ct.App.2013) (terminating child-support order entered *before* amendment when child turned 19). Thus, when a child reaches age 19, under Indiana law, the support obligation ceases. Thus, the duration of the support order the Oldham Family Court was asked to modify was until age *19*.

Because that aspect of the order was non-modifiable, being a matter of Indiana state law, the Oldham Family Court could not order that support for Logan cease when he turned age 18.[10] However, *neither* party properly asked the Oldham Family Court to consider that law.

Tod asked the court to apply Kentucky's age at which the duty of support ceases, generally age 18,[11] KRS 405.020(1), 403.211(3), and argued that since the Oldham Family Court now had continuing and exclusive jurisdiction, it could apply Kentucky law as to the age of emancipation. Rachel argued that the court had to apply Indiana's law as to duration, but informed the court that the proper age was 21, apparently in reliance on the previous version of the statute. Given that the applicable law only went into effect July 1, 2012, shortly before their arguments were made, it is understandable if not persuasive that Rachel at least was simply mistaken. However, the court did not enter its final order regarding support until January 9, 2013. There is no indication that any additional information was provided to the court.

Consequently, the court's order terminating support for Logan at age 18 because he had reached the age of emancipation under Kentucky law was contrary to the applicable Indiana law, and is an abuse of discretion. Under Indiana law, a court *may* terminate child support at age 18 if a child is otherwise emancipated. But this is not what Tod asked the court to do, nor could he have, as there is nothing to indicate that Logan was otherwise emancipated under Indiana law.

That part of the Oldham Family Court's order must be vacated, with child support being reinstated at the appropriate amount from age 18 until age 19 for Logan; Maverick's support must continue until age 19, or until either child is otherwise emancipated under Indiana law. Tod owes support at the amount ordered by the Oldham Family Court for the relevant time periods, which can appropriately be reduced to a judgment that Rachel can enforce.

## C. Awarding Tax Exemptions By a State Trial Court.

■ From almost the beginning, the parties in this case have fought over who

---

10. In fact, the Commentary to UIFSA addresses the exact factual scenario presented in this case:

Subsection (c) prevents the modification of any final, nonmodifiable aspect of the original order. For example, if child support was ordered through age 21 in accordance with the law of the issuing state and the law of the forum state ends the support obligation at 18, modification by the forum tribunal may not affect the duration of the support order to age 21.

Unif. Interstate Family Support Act § 611 cmt. (1996).

11. The duty of support extends to age 19 if the child is still in high school, KRS 406.211(3), and indefinitely if the child is disabled, KRS 405.020(2).

should have the benefit on their tax returns of the exemption for support of children. The record indicates that the parties apparently neglected to file tax returns for several years, a matter which they undertook to remedy when they filed for divorce in Indiana. The Indiana court issued several orders awarding the exemptions to one party or the other, and the parties entered into agreed orders regarding disposition at other times. When the matter finally came before the Oldham Family Court, the judge first gave Tod the tax exemptions on the two boys based on his "significantly greater income." Subsequent orders changed who got the exemption, to deal with the emancipation of the oldest son and other issues.

In fact, ordering that the tax exemption go to a specific party only serves to reduce the amount of taxes to be paid, presumably allowing that party more money to spend on the children. But all a tax exemption does is decrease the amount of *taxable* income of a party. Child support calculations are based on the *gross* incomes of the parties, KRS 403.212(2)(a), and the fact that a party pays less taxes (and arguably has more money to spend on the children) is not a consideration in setting the *amount* of child support owed. Whether the tax exemptions are beneficial financially to a party or not has *zero* bearing on the amount of support to be paid. And even if the monetary effect of the tax exemption could be calculated when a child support order was entered, the benefit from the tax exemption has no effect on the amount of support owed because any tax reduction would not be reflected in the gross income.

An argument is often made that reducing the amount of money paid to the government in taxes means more money in the family coffers as a whole, and that if the exemption is given to the party with the greater income, the family benefits because the reduction in taxes is maximized. Such reasoning belies reality, because the "family" is no longer a single unit but is instead two separate households. And though the reduction in taxes to one of those households may result in greater income to *that* household, it is pure speculation whether that household will use those tax savings for the benefit of the children, except in the broadest possible sense of having a nominally more affluent home at one parent's place of residence.

So the exemptions have no impact on the amount of support a party is actually *ordered* to pay. Giving a party the tax exemption is simply a property award, not directly a matter of setting support, since it affects the amount of money the parent ·enjoying the exemption takes home.

Despite this, the majority of states do engage in tying the dependent-child tax exemption to support awards. *See Dodge v. Sturdevant*, 335 P.3d 510, 512 (Alaska 2014) (describing majority rule). And they do this in the face of Internal Revenue Code and regulatory provisions that appear to occupy the field. *See* 26 U.S.C. § 152(e) (assigning exemption to "custodial" parent); 26 C.F.R. § 1.152–4 ("The custodial parent is the parent with whom the child resides for the greater number of nights during the calendar year, and the noncustodial parent is the parent who is not the custodial parent."). Those provisions, however, allow the "noncustodial" parent to receive the exemption if the "custodial parent" [12] signs a written waiver

---

12. We use those terms only because the IRS does. In the case of joint custody, both parents are custodial parents, though one will be the "primary residential parent." *Pennington v. Marcum*, 266 S.W.3d 759, 765 (Ky.2008). The IRS's definition of custodial parent ap-

declining to claim the exemption. 26 U.S.C. § 152(e)(2).

The IRS and the tax courts have taken the position that if the exemption is waived (on the appropriate form), the IRS will not look behind that waiver, regardless of who may be entitled to the exemption under the Code. *See* 26 C.F.R. § 1.152–4, ex. 18; *George v. C.I.R.,* 139 T.C. 508, 515 (2012). This is true even when the parent otherwise entitled to the exemption signs under threat of contempt from a state court that has assigned the exemption to the noncustodial parent. *Id.* This policy is essentially an economy of scale matter, as the federal government cannot reasonably spend the resources to go behind every waiver where a dispute may arise, though it did at one time. *See Blanchard v. Blanchard,* 261 Ga. 11, 401 S.E.2d 714, 718 (1991) (Fletchner, J., dissenting) (noting that under prior version of rule, exemption could be assigned in decree or went to parent providing majority of support, resulting in "the IRS becoming the unwilling mediator of factual disputes between divorcing parents"). Thus, it appears, the default rule laid out in the revenue code appears to be one of "administrative convenience to the IRS," *Dodge,* 335 P.3d at 513 (quoting *Monterey County v. Cornejo,* 53 Cal.3d 1271, 283 Cal.Rptr. 405, 812 P.2d 586, 590 (1991)); *see also Hart v. Hart,* 774 S.W.2d 455, 457 (Ky.App.1989) ("Congress was attempting to extricate the IRS from the costly and time-consuming business of fact finding necessary under the former version of the statute."); *Blanchard,* 401 S.E.2d at 718 (Fletchner, J., dissenting) ("Congress is indifferent to the question of which parent claims the exemption so long as the IRS does not have to expend its resources in making the decision.").

And while nothing in the Code expressly authorizes state courts to award the dependent-child tax exemption to one parent over the other, there is also nothing that expressly says that they cannot. Thus, the majority of state courts take the position that they may enter an order requiring a "custodial" parent to sign the waiver in favor of the other parent, as a matter of equity either in dividing property or considering support awards. To this point, Kentucky has followed the majority rule under decisions from the Court of Appeals. *See Hart v. Hart,* 774 S.W.2d 455, 457 (Ky.App.1989) (allowing trial court to assign exemption); *Marksberry v. Riley,* 889 S.W.2d 47, 48 (Ky.App.1994) (describing this law as "well settled" after *Hart*). This Court has not spoken directly to the matter.

But more importantly here, Indiana also follows the majority rule, doing so even by statute. *See* Ind.Code § 31–16–6–1.5. As the subsequent state rather than the issuing state, Kentucky only has jurisdiction over the Indiana order if it is a *support* order. And as stated above, the allocation of the child exemption is very much like a property award, and has no direct effect on child support.

In fact, the Indiana statute, Ind.Code § 31–16–6–1.5(a), specifically requires that "[a] court shall specify in a child support order which parent of a child may claim the child as a dependent for purposes of federal and state taxes." Of course, Indiana may do as it wishes in regard to its own taxes; but only the Internal Revenue Code and its attendant regulations govern who gets the federal exemption. But this is largely a distinction without a difference if the state court has the authority to order the custodial parent to sign the IRS waiver in favor of the other parent, which apparently it does under the Indiana statutes. Indiana clearly sees

---

pears to track what we would call the primary residential parent.

awarding the dependent-child tax exemption as a part of a support determination.

Thus the pertinent question in this case is whether the "support" award of the dependent-child tax exemption is modifiable under Indiana law. Viewed as *support*, it clearly is, just as the amount of support is modifiable, based on the needs of the child and the income available.

Indeed, the very nature of a dependent-child tax exemption, in that its benefit can vary on an annual basis depending on a number of factors such as the parent's incomes and the needs of the child, makes the award one where modification can be necessary to ensure a just result. And if a court ordered the custodial parent to sign the IRS waiver for the dependent-child tax exemption until the child turned age 18 (or the relevant age of emancipation) without it being modifiable, such an order likely would be arbitrary, particularly for a young child.

The Indiana courts are empowered to consider assigning the tax exemption as a matter of setting support, and the statute tells the courts what to "consider," and presumably make a record, in awarding the exemption: the value of the exemption on the marginal tax rate of each parent; the income of each parent; the age of the child, and the number of years the child could be claimed as a dependent; each parent's percentage of the costs of supporting the child, and, if applicable, financial aid benefits for any post-secondary education and the debt each party assumed under a property settlement agreement, and any other relevant factors. Ind. Code § 31–16–6–1.5(b)(1) to (b)(7).

But once a state court has continuing and exclusive jurisdiction to modify the support order of another state, that court can apply its own law in making the modification. Here, the Oldham Family Court assigned several years' exemptions to Tod, alternated some, and finally assigned the remaining exemptions for Maverick to Rachel. Therefore, whether the Oldham Family Court erred in making these determinations is a significant question of Kentucky law that we have not previously addressed, regardless of whether this is a UIFSA case or not.

It should be clear that assigning a *federal* tax exemption to a party who is not entitled to it under the Internal Revenue Code, or even when the court does not know who is entitled, cannot be taken lightly, if for no other reason than that the Supremacy Clause applies, and courts in good faith should recognize this. Indeed, this is why a minority of jurisdictions have held that the exemption cannot be allocated by a court. *See, e.g., Blanchard v. Blanchard,* 261 Ga. 11, 401 S.E.2d 714, 715 (1991) (holding that Georgia courts do not have authority to allocate exemption). But if the dependent-child tax exemption does indeed impact the support of a child, a state matter, then state courts may, in light of the IRS's stated intention not to interfere, consider how best to apply the tax exemption in the best interests of the *child.*

But it is also clear that a state court choosing to do so has a heavy burden to justify why this is appropriate. As the discussion above indicates, giving the tax exemption to the parent with the highest income in no way proves that the tax relief generated from the exemption inures to the child's benefit. In this regard, the Indiana statute attempts to quantify the award of the exemption based on objective factors, including how the exemption affects a party's tax rate. It would be difficult to say employing these factors, and stating them as the basis for awarding a tax exemption, is an abuse of discretion.

But we have no such statute in Kentucky, and delineating a court's discretionary equitable factors is not generally the province of the legislature as they are part of a court's inherent authority. Discretion, even in determining equity, or best interests, must have a reasonable and meaningful basis if we are not to undermine the integrity of judicial decisions and thereby erode public faith in the judiciary. To that end, a state court must do more than simply look to which parent has the highest income, or simply divide the exemptions, or simply alternate years. There is no *judgment* in such an award, and no true finding of how it is in a child's best interest, or how the extra money saved from taxes in one parent's household actually benefits the child.

■ Thus we hold that the award of a tax exemption to a party who does not qualify for it under the Internal Revenue Code, and the attendant order requiring the otherwise entitled party to sign an involuntary "waiver" of his or her federal statutory right to claim the exemption against income taxes, requires the state trial court to meet the heavy burden of stating sound reasons that this award actually serves as a support issue benefitting the child. Otherwise, this is simply arbitrary action. (Whether parties can agree to a particular treatment of the dependent-child tax exemption is not before the Court.)

And if the court cannot articulate a sound reason for why awarding the exemption to the noncustodial parent actually benefits the child, and thus affects the child's support, then it is not making a support award in the first instance, and it simply should not be done.

It appears from the record that Rachel qualified for the tax exemption for all of the years affected by the Oldham Family Court order of January 9, 2013. That

order simply says that Tod gets the exemptions for 2009, 2010, and 2011, "as previously ordered." The court's stated reason for giving Tod the exemptions was because of his higher income. The court ordered that Rachel have the exemptions for 2012, to which she was entitled anyway, so no stated reasons were necessary.

The court also stated that Rachel could claim the exemptions for Maverick until age 18, and that thereafter, the exemption would go to the party providing the majority of the child's financial support. That is not the IRS rule, which instead focuses on which parent had the child for a majority of the year, known otherwise as the "counting nights" rule. Rachel likely would qualify for Maverick's exemptions under the IRS regulations because Maverick had to that point spent most of his time in her home and likely would continue to do so. But if he did not, the court's order did not provide Tod with an opportunity to challenge in a given future year, creating a totally arbitrary ruling.

Because the court did not state a reasonable nexus to support assigning the exemptions to Tod for 2009, 2010, and 2011, the Oldham Family Court abused its discretion. There was also an abuse of discretion in setting arbitrary rules for assigning the tax exemption for Maverick in the future without stating a nexus to support it, and likewise for stating how the tax exemption would be awarded after Maverick reached age 18 if either child could qualify for support.

Who is entitled to receive a tax exemption is defined by federal law under the Internal Revenue Code. The trial court cannot award the exemption like a piece of property and thereby bind third parties, like the IRS, by its orders; the court can only order the "custodial parent" to sign a waiver in favor of the noneligible party for

a stated, sound reason reliably related to the support of the child.

### III. Conclusion

For the forgoing reasons, the decision of the Court of Appeals is reversed, and the orders of the Oldham Family Court changing the duration of child support and awarding the dependent-child tax exemption as set forth above are vacated. This case is remanded for further actions consistent with this opinion.

All sitting. All concur.