LAMBERT, J., JUDGE:
*570 Kimberly Ann Hillard has appealed from the post-decree order of the Boyd Circuit Court modifying her settlement agreement with her former husband, Jerry Lance Keating, and permitting him to claim the dependent-child tax exemptions for their younger two children. We affirm.
Kimberly and Jerry were married in 1999 and separated in 2007. Three children were born of the marriage: Shelby in 2000, Thomas in 2004, and Emily in 2006. Jerry filed a petition to dissolve the marriage in March 2007. Shortly thereafter, the parties entered into a settlement agreement. Pursuant to the terms of the settlement agreement, the parties would share joint custody of the three children with Kimberly designated as the primary residential custodian and with Jerry having visitation. Jerry would pay $1,240.00 per month in child support and half of any work-related daycare expenses, and the parties would equally split co-pays and prescription expenses for the children. In paragraph 4, the parties agreed that Jerry "shall be permitted to claim the children on his taxes until such time as [Kimberly] can no longer claim earned income credit. At that time, [Jerry] shall claim two children and [Kimberly] shall claim one child." The agreement also addressed marital real estate and debts, personal property, and Jerry's pension plans. The document established that it was "the entire agreement of the parties herein and is the final settlement of all questions which can or may arise relative to the property rights of the parties herein[.]" The court entered a decree of dissolution of marriage on May 31, 2007, in which it incorporated the settlement agreement after finding it to be not unconscionable.
Extensive post-decree litigation continued regarding issues with visitation, healthcare, and other financial issues. We shall only discuss those motions and rulings germane to the issue in this appeal.
In 2009, Kimberly filed a motion requesting that the court split responsibility for the children's healthcare expenses not covered by insurance between the parties pursuant to their percentages of income. Jerry objected, stating that pursuant to the terms of the settlement agreement, the parties were to be equally responsible for co-pays and prescription expenses, and that Kimberly was seeking modification of the court-approved agreement. By order entered May 15, 2009, the court ordered that any healthcare expenses not covered by insurance were to be divided by the parties' percentage of income.[1] Jerry was to pay or reimburse Kimberly for these expenses within 30 days from receipt of the bill.
Later that year, Kimberly sought relief related to visitation, the provision of health insurance cards, payment from Jerry of his 85% portion of the daycare costs (which she asserted was part of a previous court order), and reimbursement of medical expenses. Jerry disputed Kimberly's claim that he was obligated under a previous order to pay 85% of daycare costs. Rather, the May 2009 order addressed his need to pay 85% of the expenses not covered by health insurance, not daycare expenses. Jerry stated that the 85% amount was based upon the income percentages in the most recently adopted child support worksheet. His only obligation concerning daycare was to pay half of that amount. In addition, Jerry requested that he be allowed to claim all three children for income tax purposes if Kimberly was not working. In reply, Kimberly confirmed *571 that she was working and that she should retain the dependent-child tax exemptions. By agreed order entered December 10, 2009, the parties agreed to be equally responsible for daycare expenses, and Jerry agreed to reimburse medical expenses pursuant to the percentage of his child support obligation within 30 days of receipt.
Despite this agreement, disputes continued between the parties, and these disputes included Jerry's repayment of medical expenses. In August 2010, Kimberly filed a motion asking for Jerry to pay his percentage of preschool costs in lieu of daycare expenses and to pay his percentage of counseling, eye examination, and orthodontic costs within seven days. Kimberly reported that Jerry told her he would not pay for those expenses. In response, Jerry objected to having to pay for the youngest child's preschool costs, noting that pursuant to the settlement agreement, the children would be attending Rose Hill School as long as Kimberly's father paid those costs. He stated that the fee for the youngest child to attend preschool at a private school would be more than the daycare expenses incurred on her behalf. He also objected to Kimberly's request for payment within seven days as he was ordered to make these payments within 30 days. Finally, Jerry objected to having to pay his percentage of counseling costs because Kimberly refused to stop using an out-of-network provider rather than an in-network provider.
In September 2011, Jerry filed a motion seeking various forms of relief from the court. In particular, Jerry sought a change in the agreement related to dependent-child tax exemptions. He stated that because the court changed their obligations regarding medical expenses from 50/50 to 85/15 based upon their respective incomes, the court should change the agreement regarding the tax exemptions. Jerry stated it was inequitable because Kimberly no longer qualified for an EIC credit, meaning that he was only entitled to claim two of the children as dependents rather than all three. Kimberly paid taxes jointly with her current husband, but her husband's income was not included for child support calculation purposes. Kimberly objected to any modification of the dependent-child tax exemption allocation, stating that Jerry had agreed to not have his child support increased in exchange for less visitation time and no modification of the tax exemption. By agreed order entered August 7, 2013, the parties agreed that Jerry would pay Kimberly an increased amount of monthly child support of $1,440.00 beginning that month. The visitation schedule would remain the same as long as Jerry's work scheduled would allow it.
In February 2017, Jerry filed a verified motion seeking relief with respect to the medical expenses of all three children, the dependent-child tax exemptions, and child support. Their oldest child had become pregnant while still a minor and would incur a significant amount of medical expenses not covered by insurance as a result of the pregnancy and delivery. Their son needed braces, which would cost an additional $3,000.00 to $4,000.00 over the covered amount. Jerry requested that these expenses be equally shared between him and Kimberly. Because he was paying child support for all three children and would most likely be required to pay the bulk of the expenses for the dental work and birth, Jerry asked to be awarded the tax exemptions for all three of the children. He said this would be equitable as he would be given some relief from the added expenses. Jerry also sought a review of child support, stating that it should include Kimberly's share of the income from her and her husband's businesses.
Shortly thereafter, Kimberly filed a motion requesting that Jerry be required to *572 pay 85% of the uncovered expenses of their daughter's high-risk pregnancy, their son's braces, and their youngest child's counseling sessions and treatment for sensory issues. Kimberly wanted sole decision-making in all of these matters based upon Jerry's attitude regarding the needs of the children. She went on to state that the parties were dividing the tax exemptions for the children whereby Jerry claimed two children and she claimed one.[2] However, it would be harmful to continue to claim their oldest child due to the benefits that would be available to her if she were no longer a dependent. Therefore, Kimberly requested that they each be permitted to claim one child. She would claim their youngest child, and Jerry would claim their middle child. Neither would claim their oldest child. In her response to Jerry's motion, Kimberly stated that he had failed to secure coverage for their oldest child through healthcare.gov after she became pregnant. She also objected to Jerry's suggested change in the dependent-child tax exemptions.
The court entered an order ruling on the motions on March 30, 2017. The parties stipulated that Jerry's health insurance would not cover all of the costs associated with their oldest child's pregnancy and would cover none of the delivery costs. The oldest child did not have any healthcare for the uncovered costs of her pregnancy because Jerry had not applied for healthcare coverage for her through healthcare.gov. The court concluded that the parties would pay for the uncovered costs of the pregnancy, as well as the orthodontic and counseling expenses for the other two children, based upon their percentages of income (85/15). The court also stated that neither party could claim the oldest child as a tax dependent beginning in 2017 because of the health insurance benefits that would be available to her for her pregnancy. The order did not address the tax exemptions for the other two children.
Jerry moved the court to alter, amend, or set aside the March 30, 2017, order and requested clarification of the dependent-child tax exemptions for the two other children. Based on the ruling that he would have to pay 85% of the medical expenses that were not covered by insurance, Jerry stated it would be unfair to award him only one tax exemption when he should be entitled to two. In addition, Jerry requested that Kimberly be required to use in-network providers to limit their financial exposure. If not, she should be responsible for 100% of the incurred costs. By order entered April 14, 2017, the court ruled that Jerry would be entitled to claim the two younger children as dependents for tax purposes until further order of the court. Kimberly was ordered to use in-network providers to minimize costs.
Kimberly moved to alter, amend, or vacate the April 14, 2017, order, stating that the issue of tax deductions had previously been litigated and decided. She stated that Jerry would not be able to claim the two children under the Internal Revenue Code. She also explained that some of the providers the children had been seeing for years were not in-network, and there was a recommendation in place that the children not change counselors. By order entered May 12, 2017, the court permitted each party to claim one child as a dependent for tax purposes and ruled that Kimberly should use in-network providers whenever that was possible.
Jerry moved the court to alter, amend, or set aside the May 12, 2017, order, stating that he had never received Kimberly's motion and that he should continue to be *573 able to claim two children as dependents for tax purposes. He argued that the IRS had accepted that courts had the authority to make decisions in domestic actions as to tax deduction privileges. He reasoned that giving him the dependent-child tax exemptions in light of the increased medical expenses would balance the inequities between the parties. Kimberly objected, but the court agreed with Jerry and amended its order on June 2, 2017, to provide that Jerry would be permitted to claim both younger children as dependents for tax purposes. This expedited appeal by Kimberly now follows.
The sole issue on appeal is whether the circuit court erred or abused its discretion in modifying the allocation of dependent-child tax exemptions without making any specific findings. We shall review this for abuse of discretion. Adams-Smyrichinsky v. Smyrichinsky , 467 S.W.3d 767, 784 (Ky. 2015).
In support of her argument that the circuit court's ruling should be set aside and the terms of the settlement agreement reinstated, Kimberly relies upon the Supreme Court of Kentucky's recent decision in Adams-Smyrichinsky , supra , in which the Court addressed the dependent-child tax exemption issue in conjunction with a motion to modify child support arising from an Indiana court's decision to award the exemption to a non-custodial parent. The Court observed that, "the exemptions have no impact on the amount of support a party is actually ordered to pay. Giving a party the tax exemption is simply a property award, not directly a matter of setting support, since it affects the amount of money the parent enjoying the exemption takes home." Id. at 781.
The Court went on to describe the majority rule followed by various states, including Kentucky:
Despite this, the majority of states do engage in tying the dependent-child tax exemption to support awards. See Dodge v. Sturdevant , 335 P.3d 510, 512 (Alaska 2014) (describing majority rule). And they do this in the face of Internal Revenue Code and regulatory provisions that appear to occupy the field. See 26 U.S.C. § 152(e) (assigning exemption to "custodial" parent); 26 C.F.R. § 1.152-4 ("The custodial parent is the parent with whom the child resides for the greater number of nights during the calendar year, and the noncustodial parent is the parent who is not the custodial parent."). Those provisions, however, allow the "noncustodial" parent to receive the exemption if the "custodial parent" signs a written waiver declining to claim the exemption. 26 U.S.C. § 152(e)(2).
The IRS and the tax courts have taken the position that if the exemption is waived (on the appropriate form), the IRS will not look behind that waiver, regardless of who may be entitled to the exemption under the Code. See 26 C.F.R. § 1.152-4, ex. 18; George v. C.I.R. , 139 T.C. 508, 515 (2012).
Adams-Smyrichinsky , 467 S.W.3d at 781-82 (footnote omitted). The Court then stated:
And while nothing in the Code expressly authorizes state courts to award the dependent-child tax exemption to one parent over the other, there is also nothing that expressly says that they cannot. Thus, the majority of state courts take the position that they may enter an order requiring a "custodial" parent to sign the waiver in favor of the other parent, as a matter of equity either in dividing property or considering support awards. To this point, Kentucky has followed the majority rule under decisions from the Court of Appeals. See Hart v. Hart , 774 S.W.2d 455, 457 (Ky. App. 1989) (allowing trial court to assign exemption);
*574 Marksberry v. Riley , 889 S.W.2d 47, 48 (Ky. App. 1994) (describing this law as "well settled" after Hart ). This Court has not spoken directly to the matter.
Adams-Smyrichinsky , 467 S.W.3d at 782. The Court noted that in Indiana, there is a statute specifying that the assignment of the dependent tax exemption must be done in a child support order. There is no similar statutory provision in Kentucky. Id. at 782-84.
Finally, the Supreme Court set forth the proper law in Kentucky as to a court's allocation of dependent-child tax exemptions to a non-custodial parent:
Discretion, even in determining equity, or best interests, must have a reasonable and meaningful basis if we are not to undermine the integrity of judicial decisions and thereby erode public faith in the judiciary. To that end, a state court must do more than simply look to which parent has the highest income, or simply divide the exemptions, or simply alternate years. There is no judgment in such an award, and no true finding of how it is in a child's best interest, or how the extra money saved from taxes in one parent's household actually benefits the child.
Thus we hold that the award of a tax exemption to a party who does not qualify for it under the Internal Revenue Code, and the attendant order requiring the otherwise entitled party to sign an involuntary "waiver" of his or her federal statutory right to claim the exemption against income taxes, requires the state trial court to meet the heavy burden of stating sound reasons that this award actually serves as a support issue benefitting the child. Otherwise, this is simply arbitrary action. (Whether parties can agree to a particular treatment of the dependent-child tax exemption is not before the Court.)
And if the court cannot articulate a sound reason for why awarding the exemption to the noncustodial parent actually benefits the child, and thus affects the child's support, then it is not making a support award in the first instance, and it simply should not be done.
Id. at 784.
Jerry, in his brief, relies upon this Court's prior opinions in Hart v. Hart , 774 S.W.2d 455 (Ky. App. 1989), and Marksberry v. Riley , 889 S.W.2d 47 (Ky. App. 1994), to support his opposing argument that the award of a dependent-child tax exemption is a part of the property division award and subject to the court's discretion. In Hart , this Court permitted the trial court to assign the exemption, reasoning as follows:
The issue before us is what effect, if any, does 26 U.S.C. § 152(e) have on the trial court's ability to allocate the income tax exemptions for dependent children of divorce. This statute entitles the custodial party to claim the exemption unless that parent signs a written waiver that he or she will not claim the children as dependents. Some states have interpreted this provision of the code to preclude state court consideration of the exemption issue. See Fullmer v. Fullmer , 761 P.2d 942 (Utah App. 1988), and Stickradt v. Stickradt [156 Mich.App. 141], 401 N.W.2d 256 (Mich. App. 1987). However, other jurisdictions have decided that state court allocation of the exemption is proper and that the custodial parent may be required to execute the necessary waiver. See Fudenberg v. Molstad , 390 N.W.2d 19 (Minn. App. 1986) ; Lincoln v. Lincoln , 155 Ariz. 272, 746 P.2d 13 (App. 1987) ; Fleck v. Fleck , 427 N.W.2d 355 (N.D. 1988). We find the reasoning in the latter cases to be more persuasive.
*575 Clearly, in making the changes to § 152(e), Congress was attempting to extricate the IRS from the costly and time-consuming business of fact finding necessary under the former version of the statute. Pergolski v. Pergolski , 143 Wis.2d 166, 420 N.W.2d 414 (App. 1988). Congress, however, did not, expressly or by implication, prohibit state courts from allocating the exemption and did not, we believe, intend to tread into an area traditionally left to the states courts to adjudicate. The allocation of the exemption has, or at least should have, a bearing on the amount of money available as child support. A trial court should allocate the exemption so as to maximize the amount available for the care of the children. This power in no way conflicts with the intent of our U.S. Congress to avoid IRS involvement in the issue of which parent should be able to claim the exemptions. Fudenberg v. Molstad , supra at 21.
Hart , 774 S.W.2d at 456-57 (footnotes omitted). In Marksberry , we confirmed our holding in Hart regarding the ability of the trial court to allocate tax exemptions as well-settled. 889 S.W.2d at 48. However, these cases both predate the Supreme Court's decision in Adams-Smyrichinsky , which now controls in these situations where the court decides the allocation of dependent-child tax exemptions.
Turning to the present case, we recognize that the circuit court did not originally award the dependent-child tax exemptions. Rather, the parties fashioned this allocation as part of their settlement agreement. The Supreme Court in Adams-Smyrichinsky specifically stated it was not addressing situations where the parties had reached an agreement as to the exemptions. 467 S.W.3d at 784. While there is some disagreement between the parties as to whether the exemptions were related to child support or to property division, we hold that the court made an equitable and reasonable decision in deciding to permit Jerry to retain his two agreed-upon tax exemptions for the younger children in conjunction with its ruling that neither party could claim the eldest child as a dependent for tax purposes.
In the March 30, 2017, order, the circuit court set forth the circumstances of each child that would create increased out-of-pocket expenses for both parents, but in particular for Jerry, who was required to pay 85% of these expenses. The oldest child was undergoing a high-risk pregnancy, the middle child needed orthodontic treatment, and the youngest child needed counseling. These expenses would only be minimally covered by insurance, if at all. In addition, Jerry's child support payment had been increased to $1,440.00 a few years earlier. Based upon the totality of the specific circumstances in this case, we hold that the circuit court made sufficient findings in its March 30, 2017, order to support its decision to permit Jerry to retain two dependent-child tax exemptions as set forth in the 2007 settlement agreement and to hold that neither party could claim the oldest child as a dependent due to her need to obtain healthcare benefits through other sources.
For the foregoing reasons, the orders of the Boyd Circuit Court are affirmed.
ALL CONCUR.

While the order did not reflect what the split would be, the record established that the split was 85/15, with Jerry being responsible for 85% of the expenses.

It is unclear from the record when Kimberly began claiming one child for purposes of the dependent-child tax exemption pursuant to the terms of the settlement agreement.