JONES, JUDGE:
The central issue in this appeal is whether the parties had the ability to vest the Warren Family Court with jurisdiction to adjudicate the custody of their two minor *451 children under Kentucky's Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") by agreeing that Kentucky qualified as the children's home state. The Appellant, Heidi Jill Officer, the children's mother, asserts that the Warren Family Court never had the authority to adjudicate custody notwithstanding the parties' property settlement agreement designating Kentucky as the children's home state, and that the Warren Family Court's continuing jurisdiction over this matter is improper. The Appellee, Roger Lee Blankenship, the children's father, contends that Heidi waived her ability to contest jurisdiction because she initially agreed to the Warren Family Court adjudicating custody and failed to timely object to its exercise of jurisdiction thereafter.
We have carefully reviewed the facts in conjunction with all applicable legal authority. Our review convinces us that the Warren Family Court acted in error. The Warren Family Court never had subject matter jurisdiction to decide the custody of the parties' two minor children because Kentucky was not the children's home state. The Warren Family Court should have granted Heidi's CR 1 60.02 motion to set aside the dissolution decree, to the extent it resolved custody issues, and relinquished all custody determinations to the Oregon court.
I. BACKGROUND
Heidi Jill Officer and Roger Lee Blankenship were married on May 10, 2003, in Aiken County, South Carolina. They had two children together, one born in 2007 and the other born in 2009. In August of 2014, Heidi and Roger separated. Heidi moved from Fort Meade, Maryland, to Adair Village, Oregon, with the children. Roger stayed in Fort Meade, Maryland, until October of 2014, when he moved to Bowling Green, Kentucky. The children visited Roger in Kentucky over Christmas break in December of 2014,[2] and subsequently returned to Oregon until their summer break.
In July of 2015, during the children's summer break, Roger filed a verified petition for dissolution of marriage in the Warren Family Court. The petition cited Roger's and Heidi's separation since August of 2014, and stated that it was in the best interest of the children that Heidi and Roger be awarded joint custody, with Heidi designated as the primary residential parent. Heidi and Roger subsequently entered into a Marital Settlement Agreement (the "MSA"). The MSA made arrangements for parenting time, child support, and division of property, among other things. It also stated: "The parties understand that, at this time, Kentucky is considered the 'home state' of the children for all custody and time-sharing issues. Likewise, the parties understand that Kentucky shall continue to have ongoing, exclusive jurisdiction of all custody and co-parenting issues, unless the Court of another state assumes jurisdiction." The parties now concede, however, that Kentucky did not actually qualify as the children's "home state" as that term is defined in the UCCJEA.[3] Nevertheless, based on the *452 MSA, the Warren Family Court assumed jurisdiction over the marriage dissolution and custody of the parties' children. On November 20, 2015, the Warren Family Court entered a decree of dissolution, incorporating, by reference, the MSA. The Warren Family Court found that the MSA was not unconscionable and that its provisions with respect to custody and time-sharing were in the children's best interest.
On March 7, 2016, Roger filed a motion to modify the children's primary residential parent and a motion for Heidi to submit to hair follicle drug testing. After the Warren Family Court ordered Heidi to submit to the drug testing on April 1, 2016, Heidi completed the test and filed two reports. Her first report filed on April 29, 2016, indicated that she had tested positive for marijuana but did not include levels.[4] Her second report filed on May 27, 2016, included levels.
After the Warren Family Court granted Heidi's motion to continue the June 14, 2016 hearing on the primary residential parent, a dispute arose regarding the children's summer visitation with Roger. Roger had purchased tickets for a flight on June 20, 2016, for the children to visit him in Kentucky. Heidi, however, did not want to put the children on the plane until July 3 so that one of the children could celebrate his birthday with his friends in Oregon. A number of motions were subsequently filed,[5] resulting in an order granting Roger emergency sole custody of the children on June 23, 2016. That same day, Heidi moved to alter, amend, or vacate the Warren Family Court's order, pursuant to CR 59.05, given that the emergency prompting the order of sole custody had ended. Roger returned to Kentucky with the children on June 24, 2016. On July 13, 2016, the Warren Family Court restored joint custody of the children, pending other motions and further court orders.
On August 16, 2016, the Warren Family Court held a hearing on Roger's motion to modify the primary residential parent, among other motions. On September 14, 2016, however, before the Warren Family Court entered its ruling, Heidi filed a custody action in Oregon, arguing that Kentucky had neither initial nor continuing jurisdiction under the UCCJEA. Then, on September 20, 2016, Heidi filed a motion in *453 Kentucky to vacate the custody and parenting provisions of the MSA, challenging the Warren Family Court's subject matter jurisdiction under the UCCJEA. That same day, the Warren Family Court ordered that the children be enrolled in a Kentucky school, that Heidi only be permitted to see the children under the supervision of the Family Enrichment Center, and that the children remain with Roger until the Warren Family Court ruled on Roger's motion to modify the primary residential parent, which was under submission.
On October 10, 2016, the Warren Family Court entered an order granting Roger's motion to grant him primary residential parent status. Critically, the Warren Family Court retained continuing, exclusive jurisdiction over the matter pursuant to KRS 403.824, despite Heidi's pending motion challenging the Warren Family Court's subject matter jurisdiction under the UCCJEA. After a hearing on November 22, 2016, over subject matter jurisdiction, the Warren Family Court and the Oregon Court had a UCCJEA conference on December 7, 2016. Both parties were present and presented arguments to both courts. Ultimately, the two courts concluded that the case would be "transferred" to Oregon based on Kentucky's lack of home state status under the UCCJEA.[6]
The Warren Family Court entered an order relinquishing jurisdiction regarding custody and time-sharing issues to the Oregon court on January 3, 2017. On January 5, 2017, however, Roger filed a motion to alter, amend, or vacate the order. After a hearing on February 21, 2017, regarding the order, during which Roger argued that Heidi had waived any opportunity to challenge jurisdiction, the Warren Family Court granted Roger's motion, vacated its January 3, 2017 order, and retained jurisdiction. In its order entered May 10, 2017, the Warren Family Court agreed with Roger's waiver argument and found that it had continuing, exclusive jurisdiction over the matter pursuant to KRS 403.824. As part of this same order, the Warren Family Court denied Heidi's CR 60.02 motion to set aside the dissolution decree to the extent it resolved custody issues. This appeal followed.
II. STANDARD OF REVIEW
"Whether a Kentucky court has jurisdiction under the UCCJEA is a question of law that we review de novo. " Ball v. McGowan , 497 S.W.3d 245, 249 (Ky. App. 2016) (citing Addison v. Addison , 463 S.W.3d 755, 764 (Ky. 2015) ).
III. ANALYSIS
"The UCCJEA is a uniform law designed 'to deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved.' " Ball , 497 S.W.3d at 249 (quoting In re Custody of A.C. , 165 Wash.2d 568, 200 P.3d 689, 691 (2009) ). It has been adopted by forty-nine states and the District of Columbia.[7] Kentucky adopted the UCCJEA in 2004. It is codified at KRS 403.800 to .880.
The UCCJEA regulates "child custody determinations" which are defined as orders *454 relating to the "legal custody, physical custody, or visitation with respect to a child[.]" KRS 403.800(3). It outlines when a court can exercise jurisdiction to make initial custody determinations, as well as the factors necessary for a court to retain jurisdiction over such matters. The UCCJEA makes a child's "home state" of paramount importance to the jurisdictional question. A child's "home state" is defined as:
[T]he state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.
KRS 403.800(7).
Whether a court has jurisdiction to make an initial child custody determination is governed by KRS 403.822. Jurisdiction to make an initial custody determination "exists only in four circumstances, all of which are listed in the alternative." Adams-Smyrichinsky , 467 S.W.3d at 772. First, a court has jurisdiction to make a determination when Kentucky is the home state of the child on the date a proceeding commences in Kentucky. In other words, the child must have lived in Kentucky with a parent, or a person acting as parent for at least six consecutive months prior to the filing of a custody proceeding involving that child. See KRS 403.800(7). Second, a Kentucky court has jurisdiction over an initial determination if a court of another state does not have home-state jurisdiction or a court of the home state has declined jurisdiction in favor of Kentucky as the appropriate forum to decide custody and visitation matters. KRS 403.822(1)(b). To proceed under this circumstance, a court must also find that the child and his or her parents, or the child and one parent or a person acting as a parent, have significant connections to this state, and that substantial evidence is available here regarding the child's needs. Id. Third, a court has jurisdiction over an initial determination if all courts having jurisdiction under KRS 403.822(1)(a) and (1)(b) have declined jurisdiction on the ground that this state is the more appropriate forum. KRS 403.822(1)(c). Finally, a court has jurisdiction over an initial determination if no other court would have jurisdiction under KRS 403.822(1)(a) to (1)(c). KRS 403.822(1)(d).
Once a court with jurisdiction to make a custody determination does so, it "has exclusive, continuing jurisdiction over the determination[,]" KRS 403.824(1), until one of two things happens. Continuing jurisdiction ceases if the issuing court determines that neither the child, nor a child and one parent or person acting as a parent, have a significant connection with the state and that substantial evidence concerning the child's needs is no longer available in the state. KRS 403.824(1)(a). Jurisdiction also ceases if a court of the state or a court of another state determines that the child, the child's parents, and any person acting as a parent no longer live in the state that issued the custody determination. KRS 403.824(1)(b).
It is undisputed that Kentucky was not actually the children's home state when Roger commenced the dissolution of marriage action in July of 2015. Although the children were physically present in Kentucky at that time, they had not been residing in this state for the preceding six months. With the exception of their holiday break in December 2014, the children had been living in Oregon with Heidi since August of 2014. Oregon, not Kentucky, was *455 the children's home state. And, there is nothing in the record to indicate that Oregon declined to exercise jurisdiction over the children's custody.
Nevertheless, Roger maintains that the Warren Family Court had jurisdiction over the children's custody because the parties agreed to designate Kentucky as the children's home state. He asserts that Heidi consented to the Warren Family Court's jurisdiction, and by failing to timely appeal the dissolution decree waived any argument she might have concerning the family court's initial or continuing jurisdiction over custody matters. To this end, Roger argues that the term "jurisdiction" as used in the UCCJEA means particular case jurisdiction, not subject matter jurisdiction.
This is a subtle, but vitally important distinction because general subject matter jurisdiction cannot be conferred on a court by agreement of the parties. Likewise, it cannot be waived. And, perhaps most important to the present dispute, any order entered by a court acting without subject matter jurisdiction is void from its inception. Particular case jurisdiction, on the other hand, can be conferred by agreement of the parties, is subject to waiver, and, if lacking, renders an order merely voidable.
Family Courts are authorized by the Kentucky Constitution. It provides that "[t]he Supreme Court may designate one or more divisions of Circuit Court within a judicial circuit as a family court division." Ky. Const. 112 (6). A family court retains the general jurisdiction of a circuit court, but is also vested with additional jurisdiction as may be provided by the General Assembly. Id. The General Assembly has given Kentucky family courts jurisdiction over matters involving child custody. See KRS 23A.100(c). Roger asserts that section 112(6) of the Kentucky Constitution coupled with KRS 23A.100(c) vested the Warren Family Court with subject matter jurisdiction to act in any child custody matter, and that any limits on its jurisdiction contained in other statutes should be treated as matters of particular case jurisdiction.
Roger's argument has been adopted by a limited number of jurisdictions. See, e.g., McCormick v. Robertson , 390 Ill.Dec. 142, 28 N.E.3d 795, 803 (2015) ("As used in the statute, however, 'jurisdiction' must be understood as simply a procedural limit on when the court may hear initial custody matters, not a precondition to the exercise of the court's inherent authority."); Kenda v. Pleskovic , 39 A.3d 1249, 1256-57 (D.C. 2012) (holding that mother was judicially estopped from challenging the Indiana court's jurisdiction because she agreed that Indiana had jurisdiction, participated in an Indiana custody proceeding, and sought relief from an Indiana order).
Even though a case for classifying jurisdiction under the UCCJEA as particular case jurisdiction can be made, it is not the approach the majority of states, including our own, have taken. While the Kentucky Supreme Court has not considered the issue in as direct of a manner as presented in this case, it has expressly held that jurisdiction under the UCCJEA is "subject matter jurisdiction," and that a court either has it or it does not. See Adams-Smyrichinsky , 467 S.W.3d at 774. Notwithstanding the fact that jurisdiction under the UCCJEA depends on a factually driven application, the Kentucky Supreme Court has rejected any notion that jurisdiction can be bestowed on a Kentucky family court by the parties' agreement. Id. In Adams-Smyrichinsky , the Kentucky Supreme Court held that to be valid, jurisdiction to adjudicate custody under the UCCJEA must exist from the inception of the proceeding.
*456 As previously noted, jurisdiction is not "transferred," as the Oldham Family Court seemed to understand it. A court either has subject-matter jurisdiction in a case or it does not. As outlined above, once a court of another state has issued a child custody order, a Kentucky court does not have jurisdiction over those custody matters unless the other court subsequently declines jurisdiction. At that point, if the prerequisites exist for a Kentucky court to exercise jurisdiction, it simply has jurisdiction. That jurisdiction has not been given to it by the other court. Though it is a fine distinction, it is nevertheless an important one.
Id.
This Court has also treated jurisdiction under UCCJEA as general subject matter jurisdiction as opposed to particular case jurisdiction. In Walsh-Stender v. Walsh , 307 S.W.3d 127, 130-31 (Ky. App. 2009), the mother appealed an order from the Fayette Family Court that concerned the custody of her son. Even though both parties had consented to the Fayette Family Court's jurisdiction, this Court vacated the order on the basis that it was void because the Fayette Family Court never acquired subject matter jurisdiction:
The record does not contain an order or other document by which Tennessee relinquished its exclusive, continuing jurisdiction over these custody proceedings to Kentucky by declaring Kentucky a more convenient forum or finding that it no longer has jurisdiction. It is clear from the record that Kimberly continues to reside in Tennessee. Therefore, the KRS 403.826 prohibition against a Kentucky Court entertaining a custody modification motion applies here. The Fayette Family Court did not have the authority to hear Charles' motion to modify custody. This lack of jurisdiction cannot be waived. See Staats v. McKinnon , 206 S.W.3d 532, 542 (Tenn. App. 2006) ; In re Custody of A.C. , 165 Wash.2d 568, 200 P.3d 689, 693 n. 8 (2009) (noting that "to permit waiver of the jurisdictional provisions of the UCCJEA would undermine the goals of avoiding conflicting proceedings"); Rosen v. Rosen , 222 W.Va. 402, 664 S.E.2d 743, 749 (2008) (holding that "subject matter jurisdiction under the [UCCJEA] cannot be conferred by consent, waiver, or estoppel [and that] [t]he [UCCJEA] is a jurisdictional statute, and the requirements of the statute must be met for a court to have the power to adjudicate child custody disputes"). See also Unif. Child Custody Jurisdiction & Enforcement Act § 201 cmt., 9 Part IA U.L.A. 673 (1999) ("since jurisdiction to make a child custody determination is subject matter jurisdiction, an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under this Act is ineffective"). We are thus compelled to vacate the Fayette Family Court orders.
Id.
In Wahlke v. Pierce , 392 S.W.3d 426 (Ky. App. 2013), we confronted an order entered by the Kenton Family Court. After the initial decree and custody order was entered, all the parties moved out of the state. Sometime thereafter, the mother sought an order allowing her to relocate with the child. Father moved to dismiss the action for lack of subject matter jurisdiction. The Kenton Family Court denied father's motion, and issued an order allowing mother to relocate. Father appealed. We held that the Kenton Family Court did not have subject matter jurisdiction under the UCCJEA to issue the order and, therefore, the order was void. We explained:
[T]he relocation of both parents and the child out of this Commonwealth before *457 commencement of the modification proceeding divested the family court of exclusive, continuing jurisdiction by operation of KRS 403.824(1)(b).
Accordingly, we hold that the family court's interpretation of KRS 403.824(1) was in error. As the family court determined that neither the parents nor child resided in Kentucky at the filing of the motion to modify visitation, we conclude that the family court no longer possessed exclusive, continuing jurisdiction per KRS 403.824(1)(b) to adjudicate custody issues. Rather, the family court was divested of subject matter jurisdiction under the UCCJEA to modify child custody and visitation issues, thus rendering its orders modifying visitation of the parties' minor child void.
Id. at 431 (footnotes omitted).
Even more recently, in Ball v. McGowan , 497 S.W.3d 245, 247 (Ky. App. 2016), we confronted a somewhat similar circumstance in that the parties had agreed to a parenting plan that provided for custody issues to be resolved in Nevada. We noted that the forum/venue selection clause in the agreement was not binding on a Kentucky family court:
This clause is not dispositive of jurisdiction under the UCCJEA. See Friedman v. Eighth Judicial Dist. Court of State, ex rel. County of Clark , 127 Nev. 842, 850, 264 P.3d 1161, 1167 (2011) (an agreement by parents to confer jurisdiction on a court that might not otherwise have jurisdiction under the UCCJEA is ineffective); Sidell v. Sidell , 18 A.3d 499, 507 (R.I. 2011) (rejecting the argument that the parties may agree in a settlement document that a state remain the child's home state for purposes of the UCCJEA and, therefore, retain exclusive, continuing jurisdiction over future custody matters); Duncan v. O'Nan , 451 S.W.2d 626, 631 (Ky. 1970) ("The parties may not confer subject-matter jurisdiction by agreement.").
Id. at 247 n.4.
Our analysis has also been guided by Day v. Day , 937 S.W.2d 717 (Ky. 1997). While Day is an adoption case, not a child custody case, it is nevertheless quite instructive. In Day , on August 3, 1992, the Harlan Circuit Court entered findings of fact, conclusions of law, and a judgment granting the paternal grandparents the adoption of their son's biological child. Five months later, after the judgment had become final, both biological parents filed a CR 60.02 motion seeking to have the adoption set aside. The basis of the motion was that the child had not lived with the adoptive parents for at least 90 days before the petition. Even though there was no dispute that the Harlan Circuit Court had the authority to grant adoptions, the Kentucky Supreme Court held that the 90-day period was a jurisdictional perquisite that could not be waived or satisfied by agreement:
Both versions of the statute ( KRS 199.470(3) ) clearly require that the child reside with the petitioner continuously for at least ninety (90) days immediately prior to the filing of the adoption petition. This mandate is a prerequisite to the trial court's exercise of jurisdiction to hear the petition for adoption. If the requirement is not satisfied, the trial court does not have the authority to hear the matter and any order conferred would be void. Cf. Cabinet for Human Resources v. McKeehan , Ky.App., 672 S.W.2d 934 (1984) ; Cf. also Board of Adjustments v. Flood , Ky., 581 S.W.2d 1 (1978). Furthermore, it is well established that parties may not by agreement, appearance, estoppel or otherwise confer subject matter jurisdiction upon the court.
*458 Rodney v. Adams , Ky., 268 S.W.2d 940, 942 (1954). See also Cann v. Howard , Ky.App., 850 S.W.2d 57 (1993).
Id. at 719-20.
Like the Court in Day , we are faced with a situation that involves the clear absence of a jurisdictionally mandated fact. Instead of the adoption statutes, we are dealing with custody under the UCCJEA. The UCCJEA is clear that jurisdiction to adjudicate custody does not exist in a court of this Commonwealth unless certain jurisdictional facts have been satisfied. In this case, they were not. The parties tried to create those facts by agreement so that Kentucky could assume jurisdiction over custody notwithstanding the fact that the children had not resided in this state for the previous six months. S.J.L.S. v. T.L.S. , 265 S.W.3d 804, 814 (Ky. App. 2008). The parties' agreement was an attempt to circumvent the home state requirements of the UCCJEA. Agreements that run contrary to law, or are designed to avoid the effect of a statute, are illegal. Id. at 821. And, where parties enter into an agreement with the intention of avoiding the operation of clear, legislative requirements, the legal consequences of the statute cannot be later avoided by resort to equitable principles, like waiver or estoppel. Id.
In sum, we hold that jurisdiction under the UCCJEA is in the nature of general subject matter jurisdiction. It cannot be created by agreement, is not subject to waiver, and, if absent, renders the underlying judgment void. Our holding in this regard is necessary to fully achieve the purpose of the UCCJEA. The fundamental purpose of the UCCJEA is to avoid jurisdictional competition and conflicts between states in child custody matters. If that objective is to be achieved, the UCCJEA must be interpreted similarly among the various states. The Comments to the Uniform Act itself, make clear that jurisdiction under the Act means subject matter jurisdiction, and that any agreement by the parties with respect to jurisdiction is "ineffective[.]" "It should also be noted that since jurisdiction to make a child custody determination is subject matter jurisdiction , an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under this Act is ineffective." UNIF. CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT § 201, cmt. 2 (1997) (emphasis added).
For the Warren Family Court to have had subject matter jurisdiction over the initial custody determination, one of four circumstances of KRS 403.822 would have had to be present. None of the four factors were actually present, and the parties' agreement to designate Kentucky as the children's home state (for the then present and all future custody determinations) was ineffective. Instead of relying on the parties' agreement, the Warren Family Court should have made an independent determination regarding which state was the children's home state before assuming jurisdiction over the children's custody. Its failure to do so led it to enter a custody order that it was not authorized to enter under the UCCJEA.
The Warren Family Court lacked subject matter jurisdiction over the initial custody determination because Kentucky never qualified as the children's home state. Heidi was entitled to relief under CR 60.02. See Day , 937 S.W.2d at 718-20. Since the Warren Family Court never acquired jurisdiction over the initial custody decision, its subsequent orders attempting to modify custody, timesharing, and visitation are also void. See Wahlke v. Pierce , 392 S.W.3d 426, 429 (Ky. App. 2013) (" KRS 403.824 deals with a court's jurisdiction to modify a child custody determination and only comes into play after a court has previously acquired jurisdiction *459 to make a child custody determination under KRS 403.822."). The Warren Family Court should have granted Heidi's CR 60.02 motion and refrained from taking any further action in this matter, thereby allowing Oregon to adjudicate all matters affecting the custody of these children.
IV. CONCLUSION
Therefore, we REVERSE the Warren Family Court's judgment granting Roger's motion to vacate. The Warren Family Court lacks jurisdiction over any matters affecting custody of the parties' children.
ALL CONCUR.

Given that Heidi, Roger, and the children had lived in Louisville, Kentucky, from July of 2010 to July of 2011, this was the second time that the children had been to Kentucky.

Kentucky Revised Statutes ("KRS") 403.800(7) provides:
"Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

As of July 1, 2015, recreational marijuana use is legal under Oregon state law. See Brown v. City of Grants Pass , 291 Or.App. 8, 414 P.3d 898, 900 (2018) ("In 2014, voters approved the Adult and Medical Use of Cannabis Act (the AMCA), now codified at ORS 475B.010 to 475B.545, which legalizes adult recreational use of marijuana.").

On June 17, 2016, Roger filed an ex parte motion for emergency custody or, in the alternative, to compel Heidi to send the children to Kentucky for summer visitation. The Warren Family Court entered a temporary order that same day, ordering Heidi to put the children on the June 20, 2016, flight. But Heidi did not comply. On June 20, 2016, Heidi filed an ex parte motion for relief pursuant to CR 60.02, but the Warren Family Court denied Heidi's motion the next day, including a handwritten statement in its order that the "[p]arties agreed in dissolution action for Kentucky to retain jurisdiction." Roger then filed an ex parte emergency motion on June 21, 2016, regarding Heidi's non-compliance. The Warren Family Court had ordered Heidi to place the children on a flight no later than 4:00 p.m. central standard time on June 21, 2016, but Heidi ignored that order. Accordingly, Roger sought emergency custody of the children, and the Warren Family Court granted Roger emergency custody of the children in a second order entered on June 21, 2016, whereby the Warren Family Court directed local law enforcement in Oregon to help retrieve the children.

As the Kentucky Supreme Court has explained, the term "transfer" is actually a misnomer. The Oregon court needed merely to assume jurisdiction, no further action was necessary from Kentucky for it to do so. Adams-Smyrichinsky v. Smyrichinsky , 467 S.W.3d 767, 772-73 (Ky. 2015).

Massachusetts is the only state not to have adopted the UCCJEA.