# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



# Supreme Court of Kentucky

## 2019-SC-000670-MR

DATE 7/31/20

ALEXANDRA LAWSON        APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.       CASE NO 2019-CA-001055-OA
CAMPBELL CIRCUIT COURT NO. 14-CI-00672

HON. RICHARD A. WOESTE, JUDGE,       APPELLEE
CAMPBELL CIRCUIT COURT, FAMILY
DIVISION

AND

JEREMY VILLARREAL       REAL PARTY IN INTEREST

## OPINION OF THE COURT BY JUSTICE HUGHES

### AFFIRMING

Alexandra Lawson seeks a writ of prohibition to stay a child custody order entered by the Campbell Circuit Family Court pending her direct appeal. In the underlying action the trial court ordered that Lawson's two minor children relocate from their residence with Lawson in Mississippi to live with their father, Jeremy Villarreal, in Kentucky. Lawson argues, alternatively, that the trial court either lacked subject-matter jurisdiction to enter the relocation order or had the requisite jurisdiction but acted erroneously. The Court of Appeals denied the writ and, for the reasons stated below, we affirm.

# FACTS AND PROCEDURAL HISTORY

Alexandra Lawson and Jeremy Villarreal were married and have two minor children, S.J.V. and S.B.V.[1] The couple divorced in Indiana in May 2010 and now share joint custody of their children. Pursuant to the separation agreement, Lawson was the primary residential custodian. After their divorce, Lawson and Villarreal both remarried and have children with their current spouses. Eventually the parties agreed that Lawson could move with the children from Indiana to Northern Kentucky. Because he wanted to be closer to S.J.V. and S.B.V., Villarreal spent two years expending great effort to be transferred to Kentucky by his employer. He and his wife sold their house in Indiana, and she found new employment in the Northern Kentucky area. Not long after Villarreal's move to Kentucky, Lawson unilaterally, and without approval from the Indiana court, moved with her new husband and children to Mississippi. Villarreal objected to the move and the Indiana court, after initially ordering that Lawson return with the children to Northern Kentucky, subsequently concluded that because neither party lived in Indiana it was no longer a proper forum for the custody dispute. Meanwhile, the separation and child custody agreements were registered in Kentucky.

In May 2014 Lawson filed a motion in Campbell Family Court to relocate with the children to Mississippi because her husband had received a promotion

---

[1] As of July 2019, S.J.V. was thirteen years old and S.B.V was eleven years old. There are no dates of birth in the record, so it is unclear what ages the children are now.

2

that entailed a transfer. Villarreal opposed the motion, citing the great efforts he had made to move to Kentucky and the long distance between Northern Kentucky and Mississippi. Additionally, Villarreal feared that the communication issues he was experiencing with Lawson would only be exacerbated by the long distance. Villarreal was concerned that Lawson would not allow him to participate in decisions regarding the children's upbringing, as previously agreed to in their joint custody agreement.

At that time, Lawson requested that a relocation evaluation be conducted in Kentucky by Dr. Jean Deters. Dr. Deters expressed concern about the parties' ability to communicate, and Lawson's feelings of entitlement to be the primary residential parent, citing her unilateral attempt to move to Mississippi without court approval. Despite some reservations, the Campbell Family Court granted Lawson's motion to relocate on July 29, 2015, pointedly stating that it hoped its reliance on Lawson's understanding of the nature of joint custody was not misplaced. Villarreal remained in Northern Kentucky, and the parties maintained their custody arrangement, under which the children primarily resided with Lawson in Mississippi but spent summer break, long weekends and some holidays with Villarreal in Kentucky.

When the children came to Kentucky to stay with Villarreal for the summer after S.B.V. completed fourth grade, Villarreal noticed that S.B.V. had a fourth-grade book for summer reading. On June 29, 2018, Villarreal filed an emergency motion to prevent Lawson from making S.B.V. repeat the fourth grade, stating that S.B.V. had maintained an A/B average in the fourth grade.

3

Lawson never told Villarreal about her plans to hold S.B.V. back in school, and had he not seen the book, he may not have known about her plans until after the new school year started. Villarreal also asked the Campbell Family Court to modify the custody order to make him the primary residential custodian. On July 19, 2018, that court, by docket entry, ordered that S.B.V. proceed into fifth grade and scheduled a hearing on October 26, 2018, on the motion to modify custody.

On October 1, 2018, Lawson filed a motion for the Campbell Family Court to cede jurisdiction to Mississippi under Kentucky Revised Statute (KRS) 403.834, claiming Kentucky is an inconvenient forum. By docket entry on October 9, 2018, the trial court retained jurisdiction. In a subsequent order, the trial court stated that it made its determination based on the substantial distance between Kentucky and Mississippi and the inconvenience for both parties to transfer the case to Mississippi. Additionally, the trial court noted its familiarity with the lengthy history of the case. Lawson made no further mention, by motion or otherwise, about the jurisdiction issue until the Campbell Family Court entered the relocation order on May 28, 2019.

Prior to issuing the order, the trial court conducted hearings on October 26, 2018 and March 29, 2019. The trial court heard from both parties, as well as S.B.V.'s dyslexia therapist, pediatrician, and two teachers from his school regarding his education and Lawson's desire to impose "drug holidays," or breaks from taking his ADHD medication. When the children came to spend the summer with their father in 2018, Lawson only sent a week's worth of the

ADHD medication. This placed Villarreal in an impossible situation because S.B.V.'s pediatrician was in Mississippi, where the medication is provided, making it difficult for him to obtain more. Lawson also displayed no regard toward the fact that it was Villarreal who had to parent S.B.V. during the summer without his medication. After evaluation, the guardian ad litem for the children recommended that they relocate to Kentucky and reside primarily with Villarreal.

As noted, the Campbell Family Court entered a May 28, 2019 order requiring the children to relocate to Kentucky to live with Villarreal. The trial court determined that Lawson exhibited behaviors that were adversarial and strategic, violating the "spirit of joint custody." Ultimately, the trial court found that it is in the children's best interest to reside primarily with the custodian that would "respect the rights of the other parent to have information and input with respect to the substantive issues affecting the child." The trial court reversed the parties' parenting schedule and ordered that the children relocate to Kentucky by August 7, 2019. Lawson filed a motion to alter, amend or vacate the relocation order, noting that the trial court did not make findings regarding jurisdiction under KRS 403.834, the inconvenient forum statute for child custody determinations.

In response, the trial court entered another order on June 28, 2019, specifically addressing jurisdiction pursuant to KRS 403.834. The trial court again denied Lawson's motion to cede jurisdiction to Mississippi, finding that the children maintain a substantial connection with Kentucky. The trial court

5

acknowledged that because the children primarily reside in Mississippi, most of the evidence concerning their school, healthcare and social activities is in that state, but concluded that Lawson was not prejudiced by having to litigate the case here. The trial court noted that Villarreal invested great effort and took considerable measures to move to Kentucky following Lawson's move to Kentucky, so he could be near his children. In the trial court's view, he should not be required to litigate the case in Mississippi. The relocation to Mississippi was prompted by Lawson's husband's new position, earning $400,000 per year, which is more than Villarreal and his wife earn jointly. Lastly, given the lengthy history of this case, the trial court believed it prudent to decide the issue, rather than task a Mississippi court with spending the time and resources to become familiar with the case. In any event, the Campbell Family Court noted that no action had been filed in Mississippi.

In addition to the jurisdiction issue, the trial court made additional findings regarding its prior relocation order. The trial court reiterated its determination that Lawson acted in bad faith and in a deceptive manner in dealing with S.B.V.'s educational circumstance. The court also referenced Dr. Deters' earlier relocation opinion wherein she expressed concern about the history of poor communication between the parties and Lawson's feelings of entitlement to be the primary custodian. Dr. Deters feared that this feeling would interfere with the joint custody arrangement and opined that Villarreal was more amenable to fully communicating and cooperating in a joint custody setting. The trial court concluded that "if joint custody is in the children's best

6

interest as agreed upon by the parties, then proper participation in the joint custodial process is in their best interest." Therefore, the trial court again concluded that it is in the children's best interest to primarily reside with Villarreal in Kentucky.

On July 16, 2019, Lawson filed a petition for writ of prohibition in the Court of Appeals to stay the relocation order pending the appeal on the merits. Lawson simultaneously requested intermediate relief pursuant to Kentucky Rule of Civil Procedure (CR) 76.36(4) because the trial court had ordered that the children be relocated by August 7, 2019. Notably, Lawson argued for relief under the second class of writ cases, requiring a showing that "the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise . . . ." *Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky. 2004). The Court of Appeals denied the motion for intermediate relief, determining that Lawson failed to prove there was no adequate remedy because her direct appeal from the same orders is currently pending. The Court of Appeals also stated that Lawson was not entitled to relief under CR 76.33, the mechanism for seeking intermediate relief once a direct appeal has been initiated. After the Court of Appeals denied the motion for intermediate relief on July 24, 2019, Lawson filed a motion to amend her pending writ petition to argue that the trial court lacked jurisdiction to issue the relocation order, in essence changing her petition to one for a first-class, "no jurisdiction" writ.

In the amended writ petition Lawson maintained that the trial court lacked subject-matter jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) as codified in KRS 403.800 to 403.880. Specifically, Lawson argued that this case presents questions of first impression: 1) whether there must be a finding regarding both a significant connection *and* substantial evidence as used in KRS 403.824 for continuation of jurisdiction under the UCCJEA and 2) what constitutes substantial evidence under the statute. Lawson reasoned that because the trial court determined that most of the evidence regarding the children's school, healthcare and social activities was in Mississippi, the trial court essentially found that the relevant substantial evidence was located in Mississippi. Therefore, she argued that Kentucky lacked subject-matter jurisdiction.

The Court of Appeals unanimously denied Lawson's writ petition. The appellate court relied on KRS 403.824(1)(a), which states that Kentucky retains exclusive, continuing jurisdiction over child custody matters unless a Kentucky court makes a two-part determination: that neither the child and one parent "have a significant connection with this state" and "that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships." The Court of Appeals reasoned that because the trial court found that Villarreal and the children maintain a substantial connection with Kentucky by the frequent parenting time that occurs here, the statutory requirements for exclusive, continuing jurisdiction were satisfied and therefore Lawson was not entitled to a first-class writ. As to

8

her second-class writ argument, Lawson did not prove she lacked an adequate remedy by appeal because she presently has a direct appeal pending from the relocation order. Lawson now appeals the denial of the writ petition to this Court.

## ANALYSIS

A writ of prohibition is "extraordinary in nature, and the courts of this Commonwealth 'have always been cautious and conservative both in entertaining petitions for and in granting such relief.'" *Kentucky Emp'r Mut. Ins. v. Coleman*, 236 S.W.3d 9, 12 (Ky. 2007) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky. 1961)). As often noted, "courts of this Commonwealth are — and should be — loath to grant the extraordinary writs unless absolutely necessary." *Cox v. Braden*, 266 S.W.3d 792, 795 (Ky. 2008). This Court has held that:

> [a] writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins*, 150 S.W.3d at 10.

Lawson now states that she is proceeding under the first-class of writ cases because the Campbell Family Court acted outside its jurisdiction when it issued the relocation order. She points specifically to the trial court's June 28, 2019 order in which it found that "[s]ince the children spend most of their time

9

in Mississippi, most of the evidence regarding school, healthcare and social activities is in Mississippi." Lawson argues that this finding alone results in a loss of exclusive and continuing jurisdiction under KRS 403.824(1)(a), and hence the Campbell Family Court had no subject-matter jurisdiction.

Typically, we review the decision of the Court of Appeals to deny a writ under an abuse of discretion standard. *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 810 (Ky. 2004). "But when the issue presented involves a question of law, we review the question of law *de novo.*" *Commonwealth Fin. & Admin. Cabinet v. Wingate*, 460 S.W.3d 843, 847 (Ky. 2015), as modified (May 14, 2015). Thus, our standard of review in this matter is de novo.

Preliminarily, we note that Lawson's argument has changed throughout these proceedings. According to the trial court orders, in October 2018 Lawson filed a motion under KRS 403.834, arguing that Kentucky is an inconvenient forum. Despite her motion the Campbell Family Court maintained jurisdiction and issued the relocation order. When Lawson asked the trial court to alter, amend or vacate the relocation order, she challenged the order on three separate grounds, one being that the trial court did not make sufficient findings pursuant to KRS 403.834. When Lawson filed her writ petition, she initially classified her petition as a second-class writ, arguing that the trial court had jurisdiction but acted erroneously. Once the Court of Appeals denied her accompanying motion for intermediate relief, she changed course and argued that she is entitled to a first-class writ because the trial court

10

lacked subject-matter jurisdiction to modify the custody order. Accordingly, we will address both first- and second-class writs.

### I. Lawson is not entitled to a first-class writ because the trial court acted within its jurisdiction.

The oft-cited *Hoskins v. Maricle* standard from 2004 states that in order to obtain a first-class writ a party must prove the court acted outside its jurisdiction and that "there is no remedy through an application to an intermediate court . . . ." *Hoskins*, 150 S.W.3d at 10. This Court has since reconsidered the "no remedy" element, concluding that "[o]ne seeking a writ when the lower court is acting 'outside of its jurisdiction' need not establish the lack of an adequate alternative remedy or the suffering of great injustice and irreparable injury. Those preconditions apply only when a lower court acts 'erroneously but within its jurisdiction.'" *Goldstein v. Feeley*, 299 S.W.3d 549, 552 (Ky. 2009). As for the jurisdiction element, in *Goldstein* this Court emphasized that the jurisdiction referenced in the first-class writ standard is exclusively subject-matter jurisdiction. *Id.* at 553. Examining the history of writs in the Commonwealth, we cited, with emphasis, the following passage from *Watson v. Humphrey*, 170 S.W.2d 865, 866-67 (Ky. 1943):

> *Jurisdiction in this connection means jurisdiction of the subject matter.* The respondent unquestionably had jurisdiction to decide whether a judgment should be vacated or set aside and to determine its ultimate effect and its conclusiveness as to other parties. He may have acted erroneously but he was not acting beyond his jurisdiction.

*Goldstein*, 299 S.W.3d at 552-53. More recently, in *Appalachian Racing, LLC v. Commonwealth*, 504 S.W.3d 1, 4 (Ky. 2016), we stated succinctly: "The first

11

class of writs refers to subject-matter jurisdiction; that is, the lower court's core authority to hear the case at all."

Faced with this iron clad emphasis on subject-matter jurisdiction in order to obtain a first-class writ, Lawson argues that the "exclusive, continuing jurisdiction" provision of the UCCJEA codified at KRS 403.824(1) presents an issue of subject-matter jurisdiction. Her sole authority is *Officer v. Blankenship*, 555 S.W.3d 449 (Ky. App. 2018), a case in which the Court of Appeals stated that "jurisdiction under the UCCJEA is in the nature of general subject matter jurisdiction." *Id.* at 458. While we have no quarrel with the general holding in that case,[2] it does not purport to address the specific UCCJEA provision at issue here. KRS 403.824(1), the statute germane to this writ petition, addresses the exclusive and continuing jurisdiction of a court that has previously issued a custody order, a scenario not at issue in *Officer*.

*Officer* involved a marital settlement agreement in which the parties agreed that Kentucky was the "home state" of their children for custody purposes even though the children had not resided in this state for the period of time required by statute for Kentucky to qualify as their home state. *Id.* at 451. The distinction between subject-matter jurisdiction and particular case jurisdiction was especially important in *Officer* because while particular case jurisdiction can be conferred on a court by agreement of the parties (as the

---

[2] As a Court of Appeals' opinion, *Officer v. Blankenship* is, of course, not binding on this Court but we address it to illustrate that its "general subject matter jurisdiction" conclusion regarding the UCCJEA generally does not address the exclusive, continuing jurisdiction determination required by KRS 403.824(1).

12

parties had attempted to do), subject-matter jurisdiction cannot. *Id.* at 455. In that context, the Court of Appeals stated

> The UCCJEA regulates "child custody determinations" which are defined as orders relating to the "legal custody, physical custody, or visitation with respect to a child[.]" KRS 403.800(3). It outlines when a court can exercise jurisdiction to make initial custody determinations, as well as the factors necessary for a court to retain jurisdiction over such matters. The UCCJEA makes a child's "home state" of paramount importance to the jurisdictional question.

*Id.* at 454. After reviewing the four circumstances in which a Kentucky court has jurisdiction to make "an initial child custody determination . . . [under] KRS 403.822," the Court of Appeals observed that "[o]nce a court with jurisdiction to make a custody determination does so, it 'has exclusive, continuing jurisdiction over the determination,' KRS 403.824(1), until one of two things happens." *Id.* The *Officer* court then briefly referenced KRS 403.824(1)(a) and (1)(b), the former of which is at issue on this writ petition, but the appellate court's focus was on the jurisdictional prerequisites to make "an initial child custody determination," i.e., whether Kentucky would have had jurisdiction of the parties' custody dispute absent their attempted agreement to make it the children's home state. *Id.*

Ultimately, the Court of Appeals rejected the father's argument that Section 112(6) of the Kentucky Constitution coupled with KRS 23A.100(c) vested the Warren Family Court with subject-matter jurisdiction and that "any limits on its jurisdiction contained in other statutes [such as the UCCJEA] should be treated as matters of particular case jurisdiction." *Id.* at 455. In so

13

doing, the *Officer* court noted that this view aligned with the majority of jurisdictions that had considered whether the UCCJEA's home state provisions pertain to subject-matter or particular case jurisdiction and also arguably with this Court's opinion in *Adams-Smyrichinsky v. Smyrichinsky*, 467 S.W.3d 767 (Ky. 2015). *Id.* That case, while also not directly on point, bears mention.

In *Adams-Smyrichinsky*, this Court discussed the "transfer" of jurisdiction between states under the UCCJEA. The parties in that case were divorced in Indiana and entered an agreed order regarding custody and child support. *Id.* at 768. When the father moved to Kentucky, he filed a petition to modify custody in a Kentucky family court asking the court to transfer jurisdiction pursuant to the UCCJEA. *Id.* at 770. The Kentucky court issued an order stating that it could accept jurisdiction, but it lacked authority to order another state to transfer a case. *Id.* The father then asked the Indiana court to determine whether it retained jurisdiction, and that court found that it did not since the parties and children now resided in Kentucky. *Id.* After the Indiana and Kentucky court conferred, the Kentucky court accepted jurisdiction. *Id.*

While *Adams-Smyrichinsky* primarily addressed child support and tax exemptions for dependent children, the Court discussed the actions a Kentucky court can take under the UCCJEA regarding custody and visitation when it is not the original state that issued the order. *Id.* at 772. The Court explained that in cases where the parties move to Kentucky from another state, "the case is not 'transferred' to Kentucky, as it is commonly stated. Instead,

14

the Kentucky court simply asserts its jurisdiction over the custody and visitation matter under the UCCJEA where the other state has, in essence, declined jurisdiction." *Id.*

> A court either has subject-matter jurisdiction in a case or it does not. *As outlined above, once a court of another state has issued a child custody order, a Kentucky court does not have jurisdiction over those custody matters unless the other court subsequently declines jurisdiction.* At that point, if the prerequisites exist for a Kentucky court to exercise jurisdiction, it simply has jurisdiction. That jurisdiction has not been given to it by the other court. Though it is a fine distinction, it is nevertheless an important one.

*Id.* at 774 (emphasis added). Thus, this Court concluded that the Kentucky court did not have jurisdiction until it both consulted with the Indiana court to ascertain it had declined continuing jurisdiction, and then made the requisite statutory findings for jurisdiction in Kentucky. *Id.*

Here, the Campbell Family Court has properly exercised subject-matter jurisdiction since 2014 and has issued prior custody orders without objection from either party. This initial establishment of subject-matter jurisdiction through compliance with Kentucky statutes distinguishes it from both *Officer* and *Adams-Smyrichinsky.* While the *Officer* Court may well be correct that the UCCJEA provisions regarding initial jurisdiction under KRS 403.822 are "in the nature of general subject matter jurisdiction," the same is not true of the exclusive, continuing jurisdiction determination required by KRS 403.824(1) and at issue in this case. In that instance, like the out-of-state court referred to in the immediately preceding quote from *Adams-Smyrichinsky,* a court that has had and exercised subject-matter jurisdiction in a child custody matter is

15

deciding whether it should continue to exercise jurisdiction or whether it should "decline jurisdiction" over the case due to a change in circumstances. This determination is manifestly one of particular-case jurisdiction.

In *Nordike v. Nordike*, 231 S.W.3d 733 (Ky. 2007), this Court explained the difference between subject-matter jurisdiction and particular-case jurisdiction:

> Often, discussions of jurisdiction concern subject-matter jurisdiction, or the court's power to hear and rule on a particular type of controversy. Subject matter jurisdiction is not for a court to take, assume, or allow. Subject matter jurisdiction cannot be born of waiver, consent or estoppel, [and] *it is absent only where the court has not been given any power to do anything at all in such a case . . . .*
>
> Finally there is jurisdiction over the particular case at issue, which refers to the authority and power of the court to decide a specific case, rather than the class of cases over which the court has subject-matter jurisdiction. This kind of jurisdiction often turns solely on proof of certain compliance with statutory requirements and so-called jurisdictional facts, such as that an action was begun before a limitations period expired. Although a court may have jurisdiction over a particular class of cases, it may not have jurisdiction over a particular case at issue, because of a failure by the party seeking relief to comply with a prerequisite established by statute or rule.

*Id.* (emphasis added) (citations omitted). With this distinction in mind we turn to the continuing, exclusive jurisdiction statute and specifically the subsection relevant to this case.

KRS 403.824(1)(a) states:

(1) Except as otherwise provided in KRS 403.828, a court of this state which has made a child custody determination consistent with KRS 403.822 or 403.826 has exclusive, continuing jurisdiction over the determination until:

16

> (a) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships . . . .

Lawson argues that Kentucky has lost exclusive, continuing jurisdiction because the "substantial evidence" referenced in KRS 403.824 is no longer available in this state and as a consequence the absence of subject-matter jurisdiction entitles her to a first-class writ. This argument misperceives both the language and intent of KRS 403.824.

Lawson clearly does not dispute that the Campbell Family Court has properly exercised jurisdiction over the parties' custody dispute in the past but seemingly believes that subject-matter jurisdiction has disappeared by virtue of this statute. Manifestly, the statute is not self-executing. More accurately, a Kentucky court that has made a custody determination under the UCCJEA retains subject-matter jurisdiction; but when the parties' circumstances change, as when one or more parties move out of Kentucky, the court must still decide whether it should continue to exercise jurisdiction over that particular case, a determination that it alone can make under KRS 403.824. Indeed, the plain language of KRS 403.824 tasks the Kentucky court that made the custody determination with assessing its continuing authority given the criteria outlined. As this Court noted in *Nordike*, particular-case jurisdiction is the "kind of jurisdiction . . . [that] turns solely on proof of certain compliance with statutory requirements and so-called jurisdictional facts . . . ." 231 S.W.3d at 738. This principle plainly applies here: KRS 403.824(1) outlines the

17

statutory requirements relevant to exclusive, continuing jurisdiction and requires the court to make a determination. Simply put, in deciding whether it continues to have jurisdiction over this case after a change in circumstances, the Campbell Family Court was exercising the subject-matter jurisdiction it has had in this case since 2014 in order to make a particular-case jurisdiction determination given the then-current facts in 2019.

Perhaps the best statement of the principle applicable here, albeit in a different factual context, is from our decision in *Daugherty v. Telek*, 366 S.W.3d 463, 466 (Ky. 2012). In that case, Telek sought to dismiss an emergency protective order issued against him because the family court failed to hold a domestic violence hearing within fourteen days after the order was issued. He argued that the trial court's inaction violated KRS 403.470(4), which in 2009 limited the effectiveness of an emergency protective order to fourteen days. *Id.* at 468. The Court of Appeals agreed with Telek and held that the trial court lost subject-matter jurisdiction by not holding a timely hearing. In reversing that appellate court decision, this Court explained that "[a] court, once vested with subject matter jurisdiction over a case, does not suddenly lose subject matter jurisdiction by misconstruing or erroneously overlooking a statute or rule governing the litigation." *Id.* at 467. Further, "[o]nce a court has acquired subject matter and personal jurisdiction, challenges to its subsequent rulings and judgment are questions incident to the exercise of jurisdiction rather than to the *existence* of jurisdiction." *Id.* at 467. As the *Daugherty* Court stated, the

18

family court's failure to follow the statute was, "at most, the erroneous *exercise* of subject matter jurisdiction – it is not a lack of subject matter jurisdiction . . . ." *Id.* at 467.

The same can be said here. Even if the trial court in this case misconstrued or misapplied KRS 403.824 – an issue we do not and should not reach on a writ petition – it nonetheless maintained subject-matter jurisdiction. Lawson has confused "a court's [allegedly] erroneous action within its jurisdiction with a court acting outside its subject matter jurisdiction," just as the lower court did in *Daugherty*. Regardless of whether the trial court correctly applied the exclusive, continuing jurisdiction standard set forth in KRS 403.824(1)(a) it had the subject-matter jurisdiction to make that determination and, in fact, was the *only court* with authority to make that determination.

On that score, we note that Mississippi has also adopted the UCCJEA, and its statute states that a Mississippi court cannot modify a child custody order from another state until "[t]he court of the other state determines it no longer has exclusive, continuing jurisdiction under Section 93-27-202 or that a court of this state would be a more convenient forum under Section 93-27-207 . . . ." Miss. Code. Ann. § 93-27-203. The record does not reflect that Lawson ever attempted to file a custody action in Mississippi, but had she done so this statute would have posed an obvious obstacle. Until the Kentucky court determined it no longer had exclusive, continuing jurisdiction, a Mississippi court was not authorized to act.

19

Here the Kentucky trial court determined that it maintained continuing, exclusive jurisdiction of this case, *i.e.*, that it should not relinquish jurisdiction over this particular case based on the criteria in the statute. That particular-case jurisdiction determination can be reviewed in the ordinary course of Lawson's appeal pending before the Court of Appeals and is not a proper matter for consideration on a writ petition. More pertinently to the issue before us, the Campbell Family Court did not lack subject-matter jurisdiction to make that "exclusive, continuing jurisdiction" determination under KRS 403.824(1)(a) and thus a first-class writ is not available to Lawson.

## II.     Lawson is not entitled to a second-class writ.

To prove entitlement to a second-class writ, Lawson must show ". . . that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted." *Hoskins*, 150 S.W.3d at 10. The trial court has entered two final and appealable orders in this case. Lawson has already initiated a direct appeal from both orders, and that appeal remains pending before the Court of Appeals. A writ may not be used as a substitute for appeal or to circumvent normal appellate procedure. *Nat'l Gypsum Co. v. Corns*, 736 S.W.2d 325 (Ky. 1987); *Merrick v. Smith*, 347 S.W.2d 537 (Ky. 1961). The extraordinary remedy of a writ is not available when a trial court's alleged error in the exercise of its jurisdiction can be addressed in the normal appellate process, which is exactly the scenario here. Since Lawson has an opportunity for recourse through her

20

direct appeal, the Court of Appeals correctly held that the extraordinary relief of a second-class writ is not warranted in this case.

## CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals' denial of Lawson's petition for a writ. Whether the Campbell Family Court erred in finding it had exclusive, continuing jurisdiction in this custody dispute is an issue properly addressed in Lawson's direct appeal pending in the Court of Appeals.

All sitting. All concur.

COUNSEL FOR APPELLANT:

William David Tingley
WILLIAM D. TINGLEY, PLLC

COUNSEL FOR JEREMY VILLARREAL,
REAL PARTY IN INTEREST:

Deanna Lynn Dennison
DENNISON & ASSOCIATES

G. Keith Gambrel