RENDERED: OCTOBER 24, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0960-MR

BRENDA MASSACCI-MILLER                                                                APPELLANT

APPEAL FROM MONTGOMERY CIRCUIT COURT
v.          HONORABLE ELIZABETH H. DAVIS, JUDGE
ACTION NO. 17-CI-00125

DAVID MILLER                                                                                         APPELLEE

OPINION VACATING
AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND McNEILL, JUDGES.

McNEILL, JUDGE: The main issue in this appeal involves the enforceability of a marital settlement agreement ("the MSA") entered into by Appellant, Brenda Massacci-Miller ("Brenda"), and Appellee, David Miller ("David"). Brenda specifically challenges the validity of the term of the MSA which provides that the parties would share joint custody of Brenda's child ("Child") who was born out of wedlock and not the natural child of David. She appeals the July 11, 2024, order of the Montgomery Circuit Court which denied her motion to set aside the MSA

and reinstated the parties' joint custody arrangement.[1]  After careful review of the parties' briefs, the record on appeal, and the relevant law, we vacate the portion of the July 11, 2024, order concerning Child, and remand for further proceedings.

## BACKGROUND

The parties initially married in 2006 in Ohio and two children were born shortly thereafter.  The parties divorced in 2011.  In 2012, Brenda gave birth to Child, who was not the natural child of David.  The parties reconciled and remarried in Ohio in 2015.  The following year, Brenda commenced a paternity and child support action in Ohio against Child's biological father, William Carroll.  In that case, the Ohio court issued an order establishing paternity, setting child support, and noting that Brenda shall remain the residential parent and legal custodian of Child pursuant to an Ohio statute, which we will discuss in further detail below.  Also in 2016, the parties moved to Kentucky with their two children and Child.  The parties divorced for a second time in 2017.  Paramount to this appeal, the parties entered into the MSA which stated in relevant part:

> The parties shall have the joint legal care, custody, and control of their minor children, J.M., age ten, and J.M., age eight, and G.M., age five, which was born out of wedlock and the Wife acknowledges that the Husband is not the biological father of G.M.  The parties agree that

---

[1] The order also ordered the parties to not make disparaging remarks about each other to their children or around the children, to only communicate through a parenting app, and that David's girlfriend would undergo a hair follicle test before Child would resume any overnight visits at David's residence.

the Wife will execute an Administrative Office of the Court's Power of Attorney allowing the Husband to have the authority to access medical and educational records for G.M. and for the Husband to be allowed to attend doctor appointments and educational meetings regarding G.M.

(Record ("R.") at 14.) The circuit court issued a decree of dissolution which incorporated the MSA in October 2017. (R. at 29.) Besides the above-mentioned paragraph and one other provision of the MSA which states Brenda shall claim Child every year for taxes, there is no other specific mention of Child in the MSA or the decree of dissolution. William was also not mentioned in any documentation during the dissolution, nor was he noticed, served, or joined as a party in the dissolution action.

Over the next several years, the parties amicably coparented their children, along with Child, exercising timesharing[2] according to the terms of the MSA. Problems arose in 2023 after Brenda discovered she had been removed from the authorized pickup list at Child's school.[3] Brenda also began having

---

[2] We note that the terms timesharing and visitation are used interchangeably by the parties and the circuit court. Technically, a non-custodian has visitation rather than timesharing; however, the Court recognizes that the terms are often substituted for one another and one term's use over the other has no practicable legal effect. *See Turner v. Turner*, 672 S.W.3d 43, 52 (Ky. App. 2023) (citing *Pennington v. Marcum*, 266 S.W.3d 759, 765 (Ky. 2008)).

[3] While Brenda contends David's girlfriend had intentionally removed her from the paperwork, David maintains that the mistake was inadvertent on the part of the school.

concerns with David's live-in girlfriend and an alleged lack of parental supervision on David's part.

Brenda commenced a civil custody action against William in early 2023.[4] David was not noticed, served, or joined as a party in that action. On March 1, 2024, the circuit court entered an order awarding sole custody to Brenda. Shortly afterward, Brenda's husband filed a petition to adopt Child, Brenda ceased all contact between David and Child, and she filed a motion to set aside the MSA in the underlying action. In response, David filed motions for the circuit court to find Brenda in contempt for failing to abide by the terms of the MSA. The circuit court appointed a friend of the court ("FOC") and set the matter for a hearing in May 2024.

On July 11, 2024, the circuit court issued an order that found the MSA was enforceable and operated as a waiver of Brenda's superior parental rights to David. It further reinstated the joint custody arrangement and David's visitation rights. This appeal followed. On appeal, Brenda argues the circuit court was without jurisdiction to decide Child's custody at the time the MSA was entered; that William was not adequately notified of the 2017 dissolution proceedings or the resulting custody determination, and she lacked the independent ability to

---

[4] Montgomery Circuit Court Case No. 23-CI-00118.

relinquish custody of Child without his consent; and that the MSA was ambiguous to its term of joint custody. Because the first two arguments are dispositive to this matter, we will limit our analysis to those.

## ANALYSIS

Brenda's first argument is that the circuit court lacked subject-matter-jurisdiction to make a custody determination involving Child during the 2017 dissolution proceeding. Whether or not a court has subject-matter-jurisdiction is an argument which may be raised at any time. *Commonwealth v. Steadman*, 411 S.W.3d 717, 721 (Ky. 2013). "The question of jurisdiction is ordinarily one of law, meaning that the standard of review to be applied is *de novo*." *Appalachian Regional Healthcare, Inc. v. Coleman*, 239 S.W.3d 49, 53-54 (Ky. 2007).

Kentucky and Ohio have both codified the UCCJEA.[5] In Kentucky it is found in KRS[6] 403.800 to 403.820. KRS 403.822 specifically governs whether a Kentucky court has jurisdiction to make an initial custody determination, primary considerations being given to which state is child's home state,[7] and if another state has already exercised jurisdiction in making an initial custody determination. *See*

---

[5] Uniform Child Custody Jurisdiction and Enforcement Act.

[6] Kentucky Revised Statutes.

[7] KRS 403.800(7) in relevant part states: "'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding."

*Officer v. Blankenship*, 555 S.W.3d 449, 453-54 (Ky. App. 2018) (citing *Adams-Smyrichinsky v. Smyrichinsky*, 467 S.W.3d 767, 772 (Ky. 2015)).

Brenda instead contends that Ohio maintained exclusive continuing jurisdiction because the 2016 Ohio order from the paternity action was an initial custody determination. But this is not the case.

The relevant portion of the 2016 Ohio order states:

> Pursuant to [Ohio Revised Code] R.C. 3109.042, [Brenda] shall remain residential parent and legal custodian of the child. *This Order does not constitute an allocation of parental rights and responsibilities by the Court.*

(Emphasis added.) R.C. 3109.042 provides:

> An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child *until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian.*

(Emphasis added.)

Though Kentucky courts have not discussed the effect of R.C. 3109.042 before, Ohio courts have maintained that the default custody status it affords is not an initial custody determination. *See, e.g.*, *Matter of T.M.M.*, 2017-Ohio-9219, 102 N.E.3d 558 (7th Dist. Dec. 21, 2017); *see also, e.g.*, *In re A.W.*, 2012-Ohio-1629, ¶ 15 (2d Dist. Apr. 3, 2012). The 2016 Ohio order is an order merely noting the default status of custody that is afforded under a statute and

explicitly declining to allocate parental rights. It is not an initial custody determination.

It is undisputed that Child; Brenda, who is Child's mother; and David, who was a person acting as a parent, were all living in Kentucky for six months prior to the entry of the 2017 decree of dissolution.[8] Thus, once Child had lived in Kentucky for six months, this state became Child's home state for the purposes under the UCCJEA, and the circuit court had subject-matter-jurisdiction to make an initial custody determination.[9]

The next issue to address is whether the circuit court abided by relevant statutory requirements regarding custody proceedings when it issued the decree of dissolution and approved the MSA awarding David joint custody of Child. We answer this in the negative – primarily because, as Brenda argues,

---

[8] KRS 403.800(13) states:

"Person acting as a parent" means a person, other than a parent, who:

    (a) Has physical custody of the child or has had physical custody for a period of six (6) consecutive months, including any temporary absence, within one (1) year immediately before the commencement of a child custody proceeding; and

    (b) Has been awarded legal custody by a court or claims a right to legal custody under the law of this state[.]

[9] Brenda's own actions also support the conclusion that the 2016 Ohio order was not an initial custody determination. If it were, she could have availed herself of the process of registering a child custody determination contained in KRS 403.850. Instead, she sought to commence a civil custody action against William.

William was not afforded adequate notice of the 2017 proceedings. Necessarily entwined with the requirement of William's notice, we must recognize that the circuit court also failed to conduct any sort of evidentiary hearing in 2017 and otherwise failed to make specific findings regarding Child's best interests under KRS 403.270.[10] *See Anderson v. Johnson*, 350 S.W.3d 453, 457 (Ky. 2011); *see also Childress v. Hart*, 592 S.W.3d 314, 318 (Ky. App. 2019).

Similar to a review of a jurisdictional question, a trial court's application of the law is reviewed *de novo*. *Ball v. Tatum*, 373 S.W.3d 458, 464 (Ky. App. 2012). The UCCJEA requires notice be made to all necessary parties, including those out of state, before an initial custody determination can be made. KRS 403.812; KRS 403.830. Specifically, KRS 403.830 provides:

> Before a child custody determination is made under KRS 403.800 to 403.880, notice and an opportunity to be heard in accordance with the standards of KRS 403.812 shall be given to *all persons entitled to notice under the law of this state as in child custody proceedings between residents of this state, any parent whose parental rights have not been previously terminated, and any person having physical custody of the child.*

(Emphasis added.)

It is uncontroverted that William is Child's biological father, that his parental rights have not been terminated, that he did not receive notice of the 2017

---

[10] KRS 403.270 proffers that "an initial determination of custody requires consideration of the best interests of the child[.]" *Layman v. Bohanon*, 599 S.W.3d 423, 430 (Ky. 2020).

dissolution proceedings, and that he was not joined as a party in the underlying action.[11]  It is also well established that "parents of a child have a fundamental, basic, and constitutional right to raise, care for, and control their own children." *Mullins v. Picklesimer*, 317 S.W.3d 569, 578 (Ky. 2010) (citing *Davis v. Collinsworth*, 771 S.W.2d 329, 330 (Ky. 1989)).

The Kentucky legislature has recognized this fundamental right in the codification of the Commonwealth's statutes.  Namely, KRS 405.020 provides that, "[t]he father and mother shall have the joint custody, nurture, and education of their children who are under the age of eighteen (18)."  Further, the version of KRS 403.270(2) that existed when the 2017 decree was entered stated that trial courts "shall determine custody in accordance with the best interests of the child and *equal consideration shall be given to each parent and to any de facto custodian*."  (Emphasis added.)[12]  KRS 403.270 also provides a list of factors that a trial court shall consider in determining a child's best interests; of particular note

_____

[11] We recognize William was joined as a party and served via warning order attorney in Brenda's separate civil custody action while David was not joined as a party or noticed.  Because that matter is not before this Court on appeal, we are without jurisdiction to weigh in on the validity or enforceability of that custody order.

[12] In July 2018, KRS 403.270(2) was amended to include the provision:  "[s]ubject to KRS 403.315, there shall be a presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child."

are KRS 403.270(2)(a)-(d).[13] Given the great importance of protecting a parent's rights to the raising of his or her child and ensuring the best interests of a child are adequately contemplated by the courts of this state, the enforcement of a custody arrangement between a parent and a non-parent without proper notice being given to a child's father and the failure of a circuit court to adhere to controlling statutes is something the law simply cannot support.

After examining the 2017 decree of dissolution and MSA, it is apparent that the circuit court did not adequately consider Child's best interests or William's parental rights. As Brenda points out, there is absolutely no mention of Child or William in the 2017 decree. While the decree states that the circuit court has carefully considered and approved the MSA, the decree explicitly mentions there were only two minor children of the marriage. Additionally, there is no specific mention of KRS 403.270 or any of its factors in the decree. To the extent best interests are mentioned, the 2017 decree merely states: "the parties are the fit

---

[13]   (a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;

(b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;

(c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

(d) The motivation of the adults participating in the custody proceeding[.]

-10-

and proper persons to have the joint legal custody and control of said children and such custody arrangement is in the best interest of the children." (R. at 29-32.) Even if Child could be contemplated to be included in the term "children" as used in the decree vis-à-vis Child's mention in the MSA as David suggests, the circuit court did not make any specific findings explaining why it was in Child's best interests to be in the joint custody of a mother and a non-parent who was not a de facto custodian. It is also important to note the circuit court did not conduct any hearings during the 2017 dissolution, as it was submitted to the circuit court upon written deposition. Thus, the only evidence it had available was David's deposition, which markedly contains no mention of Child or William in the deposition either. (R. at 24-26.)

Considering the circumstances, the circuit court clearly erred in failing to adequately consider Child's best interests or William's parental rights, though it was required to do so by statute, when entering the 2017 decree approving the MSA.

As a final point, we recognize that the present situation exists, to some extent, because of Brenda's actions in intentionally not giving David notice of the custody action she filed against William until she had a sole custody order in hand as a means to challenge the parties' MSA.[14] The Court's decision to vacate the

---

[14] Brenda admitted this during her testimony below.

circuit court's order should not be taken as a staunch approval of Brenda's litigation tactics, however. Her actions, coupled with the numerous errors discussed above, have resulted in the existence of two legally conflicting custody determinations – the joint custody arrangement arising from the underlying case and Brenda's sole custody order from her custody case with William. The consequence has been instability in Child's life and an interference with Child's relationship with David, who has cared for Child for years. While we must vacate, David is not without remedy and nothing in this Opinion would prevent him from seeking to intervene in the two other related actions regarding Child below. *See Link v. Link*, 704 S.W.3d 698, 703 (Ky. App. 2024) (citing *Mullins*, 317 S.W.3d at 575).

## CONCLUSION

For the foregoing reasons, the July 11, 2024, order is vacated to the extent that it enforces joint custody of Child between Brenda and David. On remand, the circuit court is instructed to enter an order granting Brenda's motion to set aside the MSA terms regarding Child's custody.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Scott M. Sullivan
Cynthiana, Kentucky

BRIEF FOR APPELLEE:

Michelle R. Williams
Mt. Sterling, Kentucky